# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 10, 2007 Session

## TOWN OF HUNTSVILLE, TENNESSEE, ET AL. v. SCOTT COUNTY, TENNESSEE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 06-11-II     Carol L. McCoy, Chancellor**

---

**No. M2006-02146-COA-R3-CV - Filed February 28, 2008**

---

The dispositive issue on appeal in this annexation dispute by the annexing municipality against the county and Tennessee Commissioner of Revenue is which tax allocation statute controls the allocation of Local Option Revenue derived from the annexed territory, the one in effect when the municipality passed the annexation ordinances upon final reading or the one in effect when *quo warranto* litigation challenging the ordinances was concluded. The county and Commissioner of Revenue contend the statute in effect when the *quo warranto* actions challenging the validity of the ordinances were concluded applies, because that is the date the annexations became operative. The municipality contends that the tax scheme in effect when the ordinances were passed by final reading applies became the *quo warranto* actions challenging the ordinances were dismissed due to the petitioners' failure to effect sufficient service of process on the municipality. The Chancellor ruled in favor of the municipality, finding in pertinent part that the *quo warranto* litigation that was filed but not followed by sufficient service of process had no effect on the operative dates of annexation. We reverse, finding that the statute in effect when the *quo warranto* litigation was concluded controls the allocation of tax revenue from the annexed territories.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, P.J., M.S., and J. STEVEN STAFFORD, SP. J., joined.

David L. Buuck, Knoxville, Tennessee, and John Beaty, Huntsville, Tennessee, for the appellant, Scott County, Tennessee, A Municipal Corporation of the State of Tennessee.

Robert E. Cooper, Jr., Attorney General and Reporter, and Mary Ellen Knack, Assistant Attorney General, for the appellant, Commissioner of Revenue of the State of Tennessee.

Andrew R. Tillman, Knoxville, Tennessee, for the appellee, Town of Huntsville, Tennessee.

**OPINION**

The Town of Huntsville (the "City") passed two separate annexation ordinances, Ordinance 97-98-05 and Ordinance 97-98-06, on second and final reading on December 29, 1997, and February 16, 1998, to annex certain property in Scott County (the "County"). Property owners in the annexed areas timely filed *quo warranto* actions challenging the ordinances. The *quo warranto* actions remained viable for four years, until 2002, when the Tennessee Supreme Court denied an application for permission to appeal the judgment of this court. *See State ex rel. Barger v. City of Huntsville*, 63 S.W.3d 397 (Tenn. Ct. App. 2001) (perm. app. denied Jan. 7, 2002). Significant to the issue on appeal, this court had affirmed the trial court's dismissal of the *quo warranto* actions due to insufficient service of process. *Id*. at 398. The actions were brought against the City. The Summons stated that it was served upon the City "at Mayor Charles Sexton's Office." *Id*. The City contended there was no personal service on the Mayor, but rather that copies of the Summons and Complaint were merely "left at the Mayor's office." *Id*. The City argued that Tenn. R. Civ. P. 4.04(8) required personal service on the Mayor.[1] *Id*. The trial court agreed and dismissed the *quo warranto* actions, and this court affirmed the trial court.

This court affirmed the trial court's dismissal of the *quo warranto* actions for insufficient service of process in August of 2001, and the Tennessee Supreme Court issued its order denying the plaintiffs' application for permission to appeal on January 7, 2002.

While the challenges to the sufficiency of process of the above referenced *quo warranto* actions were pending, the Tennessee General Assembly enacted Tenn. Code Ann. § 6-51-115(b)(2) (1998). This statute, which went into effect on May 19, 1998, made significant changes to the manner in which tax revenues from newly annexed areas were allocated between the county and the annexing municipality. Those changes redirected a significant portion of the applicable taxes from the municipality to the county for a period of fifteen years following the annexation.[2]

---

[1]Tenn. R. Civ. P. 4.04(8) requires that service may be made upon a municipality by delivering a copy of the summons and complaint to the "chief executive officer thereof, or to the city attorney." In the *quo warranto* actions, a copy of the summons and complaint were left at the mayor's office, but were not personally delivered to the mayor. *State ex rel. Bar*ger, 63 S.W.3d at 399.

[2]The 1998 statute provided that when a municipality annexed territory in which there is retail or wholesale activity at the time the annexation takes effect, the tax revenue from the annexed area shall be allocated between the municipality and county as follows:

> [F]or retail activity subject to the Local Option Revenue Act, the county shall continue to receive annually an amount equal to the amount of revenue the county received pursuant to § 67-6-712(a)(2)(A) in the twelve (12) months immediately preceding the effective date of the annexation for business establishments in the annexed area that produced Local Option Revenue Act during that entire twelve (12) months. . . . For business establishments which did not produce revenue before the annexation date and produced revenue within three (3) months after the annexation date . . . the county shall continue to receive annually an amount determined . . . . A municipality shall only pay the county the amount required by this subdivision (b)(2), for a period of fifteen (15) years.

(continued...)

Following the conclusion of the *quo warranto* actions and appeals, the City was informed that certain revenue derived from the annexed areas would be distributed to the County for the statutory period of fifteen years, pursuant to Tenn. Code Ann. § 6-51-115(b)(2) (1998), because it was what the state identified as "annexation date revenue." Thereafter, the City filed this action, seeking a declaratory judgment against the County and Loren L. Chumley, Commissioner, Department of Revenue of the State of Tennessee (collectively, the "defendants").[3] The City contended that both ordinances were passed on final reading before Tenn. Code Ann. § 6-51-115(b)(2) (1998) went into effect on May 19, 1998, and, therefore, Tenn. Code Ann. § 6-51-115(b)(2) (1998) did not apply to the annexed areas at issue. Alternatively, the City sought a declaration that the *quo warranto* actions challenging its annexations did not toll the operative date of the annexations because the *quo warranto* actions were dismissed for insufficient service of process. Therefore, the City contended, the annexations became operative thirty days after passage, which was months *before* the enactment of Tenn. Code Ann. § 6-51-115(b)(2) (1998). The defendants, however, contended the annexations did not become operative until the *quo warranto* actions were dismissed in 2002, that Tenn. Code Ann. § 6-51-115(b)(2) (1998) was in effect in 2002, and therefore, it controlled the allocation of taxes in the annexed areas.

There being no factual disputes, all parties filed motions for summary judgment. The trial court granted the City's motion for summary judgment. The trial court found the ordinances were passed before the provisions of Tenn. Code Ann. § 6-51-115(b)(2) (1998) became effective, and therefore, the 1998 statute did not apply. The trial court also found that the annexations became operative thirty days after passage of the ordinances on second reading due to the fact the *quo warranto* actions "had no effect or consequence on the operative date in that they were not followed with sufficient service of process." This appeal followed.

---

[2](...continued)

Tenn. Code Ann. § 6-51-115(b)(2). Prior to 1998, Tenn. Code Ann. § 6-51-115 provided that the county "shall continue to receive the revenue from all state and local taxes distributed on the basis of situs of collection, generated within the annexed area, until July 1 following the annexation . . ." Based upon the statute as it existed when the ordinances at issue were passed, the City would have received the applicable taxes as of July 1 following the annexation ordinance going into effect; however, under the 1998 statute, the County would continue to receive the applicable taxes for the next fifteen years. The statute has been the subject of several substantive amendments that affect the allocation of the Local Option Revenue between the county and the annexing municipality. The amendments include Chapter 959 of the Public Acts of 2004, Chapter 311 of the Public Acts of 2005, and Chapter 602 of the Public Acts of 2007.

[3]Although the record is unclear as to the timing, it is undisputed that the City met the procedural requirement of petitioning the Department of Revenue for a declaratory order. The record contains a Notice of Filing of Department's Refusal to Issue Declaratory Order filed in the trial court on January 25, 2006. Neither the City's petition for a declaratory action nor the Department of Revenue's refusal is in the record.

STANDARD OF REVIEW

No genuine material factual disputes are presented. The issues presented hinge on the proper interpretation of Tennessee statutes and their application to the facts of this case. Issues involving the construction of statutes and their application to facts involve questions of law. *Memphis Publ'g Co. v. Cherokee Children & Family Servs., Inc.*, 87 S.W.3d 67, 74 (Tenn. 2002); *Waller v. Bryan*, 16 S.W.3d 770, 773 (Tenn. Ct. App. 1999). Therefore, the trial court's resolution of these issues is not entitled to Tenn. R. App. P. 13(d)'s presumption of correctness on appeal. We will review the issues *de novo* and reach our own independent conclusions regarding them. *King v. Pope*, 91 S.W.3d 314, 318 (Tenn. 2002).

## ANALYSIS

The defendants present two issues on appeal. First, they contend that the tax distribution scheme in effect when the annexations became operative, not the statute in effect when the ordinances were passed on second and final reading, controls the allocation of taxes from the annexed territories between the City and the County. Second, the defendants contend that the annexations did not become operative until the *quo warranto* actions challenging them became final upon the Tennessee Supreme Court's denial of application for permission to appeal on January 7, 2002.

The first issue presented was decided by this court while this appeal was pending in *City of Knoxville v. Knox County, Tennessee*, No. M2006-00916-COA-R3-CV, 2008 WL 465265 (Tenn. Ct. App. Feb. 20, 2008).[4] In *City of Knoxville* we held the determinative date was "the date on which the annexation ordinance becomes "effective" or "operative." *Id.* at *4 (citing *Piper v. City of Memphis*, 861 S.W.2d 832, 833-34 (Tenn. Ct. App. 1992)). As we stated in *City of Knoxville*, "[w]hen a *quo warranto* action is timely *filed* to challenge an annexation, the effective date of the challenged annexation ordinance is 'held in abeyance' pending the litigation."[5] *Id.* at *3 (citing *Highwoods Properties, Inc. v. City of Memphis*, No. W2006-00732-COA-R3-CV, 2006 WL 3628102 at *7 (Tenn. Ct. App. Dec. 14, 2006)) (emphasis added). We further explained that the annexation was not "'effective' or 'operative' until the ordinance is upheld as valid by the presiding court." *City of Knoxville*, 2008 WL 465265 at *3 (citing *Piper*, 861 S.W.2d at 833-34). Thus, the

---

[4] The issue in *City of Knoxville* was whether Tenn. Code Ann. § 6-51-115(b)(2), enacted by Chapter 1101 of the Public Acts of 1998 and effective May 19, 1998, applies to an annexation ordinance, the final reading and approval of which occurred prior to May 19, 1998, but that was not operative until after May 19, 1998, because of litigation challenging the annexation. *City of Knoxville v. Knox County, Tennessee*, No. M2006-00916-COA-R3-CV, 2008 WL 465265 at *2 (Tenn. Ct. App. Feb.20, 2008). We reversed the Chancery Court's determination that the tax distribution statute in effect when the ordinance was passed and approved by the city applies. *Id.* at *4.

[5] Tennessee Code Annotated § 6-51-102(a)(1) authorizes a municipality to annex an adjoining territory "when it appears that the prosperity of such municipality and territory will be materially retarded and the safety and welfare of the inhabitants and property endangered." *City of Knoxville*, 2008 WL 465265 at *3. The annexation, however, does not go into effect immediately upon passage of the ordinance by the municipality. *Id.* The ordinance does not become operative until thirty days after final passage, during which time property owners may file a *quo warranto* action to contest the annexation. *Id.* (citing Tenn. Code Ann. § 6-51-102(a)(1)); *see* Tenn. Code Ann. § 6-51-103.

statute in effect when the ordinance became "effective" or "operative" controls the allocation of taxes from the annexed territory between the annexing municipality and the county. *Id.*

With the first issue having been answered by our ruling in *City of Knoxville*, we turn our attention to the determinative issue in the instant case, which is when the City's annexations became "effective" or "operative." The defendants contend the trial court erred by finding the annexations became operative in 1998. The City, however, contends the trial court correctly concluded they became operative in 1998 because the *quo warranto* actions challenging the annexation ordinances "had no effect or consequence on the operative date in that they were not followed with sufficient service of process." We respectfully disagree with the City and the trial court.

As we determined in *City of Knoxville*, the mere *"filing"* of a *quo warranto* action holds the effective date of the annexation in abeyance until the filed action is dismissed. 2008 WL 465265 at *3. All civil actions are commenced by "filing a complaint with the clerk of the court." Tenn. R. Civ. P. 3. Insufficiency of service of process does not render the filing a nullity; instead, it is merely a defense that must be asserted, Tenn. R. Civ. P. 12.02, and if the defense of insufficiency of service of process is not properly asserted, the issue is waived. Tenn. R. Civ. P. 12.08; *e.g., Faulks v. Crowder*, 99 S.W.3d 116, 125 (Tenn. Ct. App. 2002) (holding that the Tennessee Rules of Civil Procedure specifically address the defense of insufficient process, that they provide for the waiver of such a defense, and that Rule 12.08 states that "[a] party waives all defenses and objections which the party does not present either by motion . . . or . . . in the party's answer or reply").

The *quo warranto* actions at issue were timely filed and summons were timely issued. Unfortunately for the landowner petitioners, the process server left the summons with the City Recorder and did not directly serve the Mayor. Although the City had actual notice of the commencement of the action, the City, as it was entitled to do, asserted the defense of insufficient service of process. Although the trial court dismissed the *quo warranto* actions for insufficient service of process, and this court affirmed the trial court, the successful defense did not render the filing of the *quo warranto* actions a nullity. To the contrary, the *quo warranto* actions were pending until January 7, 2002, when the Supreme Court denied the Rule 11 application for permission to appeal this court's decision. Although the annexation ordinances were passed and approved by the City in December of 1997 and February of 1998, *quo warranto* actions were timely filed challenging the ordinances, and as long as the *quo warranto* actions were pending, the annexations did not become effective or operative. *See City of Knoxville*, 2008 WL 465265 at *3.

The determinative date is the date on which the annexation ordinance becomes "operative." *Id.*; (citing *Piper*, 861 S.W.2d at 833-34). Tenn. Code Ann. § 6-51-115(b)(2), enacted by Chapter 1101 of the Public Acts of 1998, was in effect when the annexations at issue became operative in January of 2002. Therefore, Tenn. Code Ann. § 6-51-115(b)(2), not the statute in effect when the ordinances were passed on second reading by the City, controls the allocation of taxes from the annexed territory between the Town of Huntsville and Scott County.

**IN CONCLUSION**

We vacate the award of summary judgment in favor of the Town of Huntsville, remand with instructions for the Chancellor to grant the defendants' motions for summary judgment and for such other proceedings as may be necessary. Costs of this appeal are assessed against the Town of Huntsville.

 

_____
FRANK G. CLEMENT, JR., JUDGE