# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS
### April 18, 2012 Session

## DENNIS ALLEN, ET AL. v. CITY OF MEMPHIS, TENNESSEE, ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### Nos.  CH-01-2356-3/ CH-02-1801-1      Kenny Armstrong, Chancellor

### No. W2011-01163-COA-R3-CV - Filed May 10, 2012

Plaintiffs attempted to challenge annexation Ordinance 4321 via a complaint for declaratory judgment based upon alleged violations of the Open Meetings Act.  Summary judgment was granted to the City of Memphis, but this Court reversed the grant and remanded for further proceedings.  On remand, a trial was held and judgment entered in favor of the City. Because Plaintiffs failed to file a timely *quo warranto* action, which was the proper vehicle for Plaintiffs' challenge, we dismiss Plaintiffs' claims against the City and thus, we affirm the trial court's upholding of Ordinance 4321.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

Richard L. Winchester, Jr., Memphis, Tennessee, for the appellants, Dennis Allen, et al

Allan J. Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellee, City of Memphis, Tennessee, et al

**OPINION**

## I.  FACTS & PROCEDURAL HISTORY

A portion of the relevant facts of this case have been previously set forth in a prior opinion of this Court.

On March 21, 1995, the City of Memphis approved a resolution to annex a portion of Shelby County known as the Bridgewater/Countrywood/Eads annexation area. As it was stated in the transcript of the public hearings, the purpose of such annexation was to prevent the City of Arlington, also located in Shelby County, from annexing such area and curtailing further growth by the City of Memphis. In addition, the area had reached a level of urban density such that it required urban level services that the City of Memphis could provide. On April 4, 1995, the City Council for the City of Memphis ("City Council") held a public hearing and adopted the first reading of the ordinance proposing such annexation. Again, on April 18, 1995, the City Council held a second public hearing and adopted the second reading of the ordinance. When the ordinance came up for a third reading on May 2, 1995, the City Council delayed the reading to allow for further discussions between Memphis and Arlington to devise an annexation reserve area agreement acceptable for both cities.

Between May and August 1995, the City Council committee on annexation ("Committee") met to analyze the cost associated with providing services to the Bridgewater/Countrywood/Eads annexation area and to refine the boundaries for annexation to conform with the City of Memphis' policy of annexation. Such meetings were not held in secret, but were open to the public and preceded by notice, although no minutes of such meetings appear in the record.[1] On August 1, 1995, the City Council met at a public hearing and approved the annexation ordinance, ["]Ordinance 4321["]. On August 15, 1995, a motion to reconsider Ordinance 4321 was made and passed to delay the third and final reading of the ordinance until September 5, 1995, in order to allow the City of Memphis and the City of Arlington another chance at

_____

[1] In its brief to this Court, the City of Memphis contends that "prior to reversal by this Court, this case was decided on summary judgment based on limited facts. Following remand, additional facts were introduced at a full trial of the case. One of the most significant and additional facts is that the City Council Committee meetings at issue in this case were promptly and fully recorded by audio tape, which recording was open to public inspection, and included the complete record of the proceedings, the persons present, all motions, proposals and resolutions offered, and the results of any votes taken."

formulating a reserve annexation agreement. When the City Council again addressed Ordinance 4321 at a public hearing on September 5, 1995, the ordinance was amended concerning an area located north of Highway 64. Again, Ordinance 4321's final reading was delayed until September 19, 1995.

On September 19, 1995, the City Council held a final reading for Ordinance 4321 as amended on September 5, 1995, which included an area 1,000 feet north of Highway 64. At this public hearing, the City Council passed Ordinance 4321. However, the version of Ordinance 4321 that was passed on September 19, 1995, differed from previous versions because it now *excluded* a 3.2 square mile area known as Bridgewater, which is bounded on the north by Interstate 40, the south by the City of Memphis' former city limits, the west by Whitten Road, and the east by the remainder of the area which was annexed by Ordinance 4321. It is undisputed that the Bridgewater area was included in the original ordinance and no motion was made to delete Bridgewater at any of the four public hearings of the City Council in August or September of 1995. In addition, the minutes of the September 5 and September 19, 1995, meetings state that the western boundary of the annexation area is Whitten Road, the western boundary for the Bridgewater area, and the September 5 meeting refers to the annexation area as the "Bridgewater/Countrywood/Eads" annexation area. The City of Memphis' explanation, in a discovery interrogatory, was that

> City Administration representatives informed [Memphis City]
>
> Council members at a public committee meeting sometime after June 15, 1995 that the Administration proposed deletion of [the] Bridgewater area because its density and development were not consistent with City [of Memphis] annexation policy. Thereafter, Bridgewater was omitted from all maps depicting the area to be annexed [by the City of Memphis].

Subsequently, Mid-America Apartment Communities, L.P. ("Mid-America") and Rockcreek Plaza Apartments ("Rockcreek") filed an [declaratory judgment] action against the City of Memphis, challenging the validity of Ordinance 4321 pursuant to the Open Meetings Act. In addition, Dennis Allen, Dan Hesse, Charlese Tolar and Robert Webb (collectively with Mid-America and Rockcreek, "Appellants") filed a complaint [for declaratory judgment][2] similarly challenging Ordinance 4321. Both actions were transferred to the

---

[2]It appears that this complaint is not included in the record before us.

Chancery Court of Shelby County and consolidated for a decision. All Appellants and the City of Memphis filed motions for summary judgment. The trial court denied Appellants' motions for summary judgment and granted the City of Memphis' motion for summary judgment.

*Allen v. City of Memphis*, Nos. W2003-00695-COA-R3-CV, W2003-00396-COA-R3-CV, 2004 WL 1402553, at \*1-2 (Tenn. Ct. App. June 22, 2004) (emphasis added). In granting summary judgment to the City of Memphis, the trial court found that the Committee for the City Council violated the Open Meetings Act because it recorded no minutes of the meeting in which it amended Ordinance 4321 to delete the Bridgewater area. *Id.* at \*4. However, it determined that by approving the amended Ordinance 4321, the City Council had ratified the action taken by the Committee, thus curing any violation of the Open Meetings Act[3] effectuated by the Committee. *Id.*

All Appellants then appealed the trial court's grant of summary judgment to this Court. We reversed the trial court's grant of summary judgment to the City of Memphis and we remanded for further proceedings. *Id.* at \*2. Specifically, we could not determine whether the Open Meetings Act applies to the Committee because it was unclear from the record whether the Committee is a "governing body" which holds "meetings" as defined by the Open Meetings Act. *Id.* at \*4-5. Thus, we instructed the trial court, on remand, to consider the applicability of the Open Meetings Act to the Committee. We concluded, however, that if the Open Meetings Act applies to the Committee, and that the Committee violated such, that the City Council had not given the issue of Bridgewater's deletion "a new, let alone substantial, reconsideration of that issue" so as to support the trial court's finding of ratification by the City Council. *Id.* (citing *Souder v. Health Partners, Inc.*, 997 S.W.2d 140, 150-51 (Tenn. Ct. App. 1998)).

On remand, discovery was conducted and a trial held on January 19, 2011. On April 13, 2011, the chancery court entered an Order on Declaratory Judgment in favor of the City. Specifically, the chancery court found as follows:

[I]t is undisputed that at some point prior to the final reading and vote on

_____

[3]Tennessee Code Annotated sections 8-44-101, -102 provide, in part, that "it [is] to be the policy of this state that the formation of public policy and decisions is public business and shall not be conducted in secret[,]" thus, "[a]ll meetings of any governing body are declared to be public meetings open to the public at all times, except as provided by the Constitution of Tennessee."

[Ordinance 4321] by the City Council a recommendation was made by the annexation committee to delete the Bridgewater area from the annexation, based on a case benefit study conducted by the Office of Planning and Development. And when the vote was taken by the full City Council on September 19, 1995, the Bridgewater area was deleted from the ordinance.

Originally, in their complaint for declaratory judgment, the Plaintiffs challenged the subject ordinance on the ground that the decision to delete Bridgewater was adopted by secret vote at a meeting of the City Council, not publicly announced, in violation of the Open Meetings Act. The Plaintiffs now challenge the legality of the ordinance because at the full meeting of the City Council on September 19th no formal motion was made by any member of the council to exclude Bridgewater from the annexation ordinance. The proof at trial clearly established that there was no secret or private meeting of the full council prior to the vote to delete to Bridgewater from the annexation ordinance.

The chancery court then found that the Committee had not deleted Bridgewater, as it lacked authority to do so, but that it had merely *recommended* deletion to the City Council. The court also determined that the Committee did not hold a "meeting" and therefore, that its actions were not subject to the Open Meetings Act. Thus, it found no requirement that the City Council give "substantial reconsideration" to the Committee's recommendation. The court found that the "City Council had before it at the time of its vote in this matter maps that exhibited an alternative plan that excluded Bridgewater[,]" and that "Council members understood that by adopting the alternative plan Bridgewater was being excluded and that the decision to delete Bridgewater was the will of the full Council at the time of the vote on September 19th." A Final Decree was entered on May 5, 2011, and Plaintiffs timely appealed to this Court.[4]

## II. ISSUES PRESENTED

Appellants present the following issues for review:

1.  Did the trial court err in determining that the City of Memphis could amend an ordinance without discussion, a motion, or vote in a public meeting;

---

[4]The Mid-America plaintiffs did not appeal to this Court.

2.    Did the trial court err in determining that the Memphis City Council could amend or adopt an Ordinance based upon the City Council Members' "understandings" of what the content of the ordinance should be, even if the content of the ordinance so adopted is contrary to the spoken words and the minutes taken at the public meeting;

3.    Did the trial court err in determining that members of the Memphis City Council could convene and discuss how they should vote and how they should recommend others to vote on matters to come before the Memphis City Council in meetings which do not comply with the Tennessee Open Meetings Act; and

4.    Did the trial court err in declining to nullify City of Memphis Annexation Ordinance 4321?

For the following reasons, we dismiss the Plaintiffs' claims against the City of Memphis and thus, we affirm the trial court's upholding of Ordinance 4321.  All remaining issues are pretermitted.

### III.  STANDARD OF REVIEW

On appeal, a trial court's factual findings are presumed to be correct, and we will not overturn those factual findings unless the evidence preponderates against them.  **Tenn. R. App. P. 13(d) (2012)**; ***Bogan v. Bogan****,* 60 S.W.3d 721, 727 (Tenn. 2001).  For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Watson v. Watson****,* 196 S.W.3d 695, 701 (Tenn. Ct. App. 2005) (citing *Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999)).  When the trial court makes no specific findings of fact, we review the record to determine where the preponderance of the evidence lies. ***Ganzevoort v. Russell****,* 949 S.W.2d 293, 296 (Tenn. 1997) (citing *Kemp v. Thurmond,* 521 S.W.2d 806, 808 (Tenn. 1975)).  We review a trial court's conclusions of law under a *de novo* standard upon the record with no presumption of correctness. ***Union Carbide Corp. v. Huddleston****,* 854 S.W.2d 87, 91 (Tenn. 1993) (citing *Estate of Adkins v. White Consol. Indus., Inc.,* 788 S.W.2d 815, 817 (Tenn. Ct. App. 1989)).

### IV.  DISCUSSION

Appellants' position on appeal–particularly their contention regarding the timing of Bridgewater's deletion and the alleged Open Meetings Act violation(s)–is difficult to discern. Appellants do not specifically pinpoint when decisions regarding Bridgewater's deletion were allegedly made: during a Committee meeting, during a City Council meeting, or

elsewhere. Appellants seem to suggest that if Bridgewater was deleted in a Committee meeting, that minutes of the meeting were not properly kept, and that if Bridgewater was deleted in a City Council meeting, that the public was not sufficiently notified that the ordinance being considered excluded Bridgewater.

Without reference to specific deficiencies, Appellants contend that "the Ordinance discussed and approved in the open meetings included the Bridgewater area[,]" but the ordinance ultimately signed by the Chairman of the City Council and the Mayor of the City of Memphis was "substantially different" from the ordinance "that had previously been discussed, amended, and passed in public meetings of the Memphis City Council[,]" as the signed Ordinance 4321 excluded Bridgewater from the area annexed. Thus, Appellants maintain that Bridgewater was somehow "silently deleted" from the annexation area without discussion or a public vote in "an open meeting of the Memphis City Council[,]" thus effectuating a violation of the Open Meetings Act.[5] However, they concede that they have not proven that either the City Council or the Committee conducted a "secret meeting" in which Bridgewater was deleted from the area to be annexed.

On appeal, the City of Memphis contends that the Committee is not subject to the Open Meetings Act, and that even if it is, both the Committee and the City Council complied with the Act's requirements. Moreover, the City rejects Appellants' assertion that Bridgewater was "secretly deleted" from the area to be annexed, and it explains the circumstances surrounding Ordinance 4321's adoption. According to the City, Bridgewater "was actually deleted from the annexation boundaries by the City Administration following a cost benefit study" and a "map depicting an 'Alternative A[,]' which did not include Bridgewater, was provided to the [] [C]ommittee" in July 1995. Apparently at the July 1995 Committee meeting, the Committee voted to recommend "Alternative A" for consideration and action by the City Council. Then, at an August 1, 1995 City Council meeting, the Committee Chairman moved the adoption of the annexation item in the form approved by the Committee on July 18, 1995, while a map of "Alternative A" was visually displayed. The motion was adopted, but at the next City Council meeting on August 15, 1995, the motion was reconsidered and the final reading delayed to September 5, 1995. At the September 5, 1995 City Council meeting, City Council member Hooks proposed that the northern boundary of "Alternative A" be extended 1000 feet north of Highway 64. The proposal was initially rejected, and City Council member Hooks moved to suspend the rules to reconsider the previous vote. The motion to reconsider was approved and the final vote was delayed until September 19, 1995. At the September 19, 1995 City Council meeting, the City Council voted to adopt Ordinance 4321, as reconsidered on September 5, 1995. The City claims that "a map used by the [City] Council at the September 19, 1995 meeting at which the

---

[5]**Tenn. Code Ann. § 8-44-101(a), et seq.**

Annexation Ordinance was finally adopted was made a part of the official record of the proceedings[,] . . . [and that] [t]his map reflects that the [City] Council voted to annex the Countrywood/Eads areas only together with a strip of land that extended 1000 feet north of Highway 64, and that the Bridgewater area was not annexed." The City maintains that "the [City] Council's adoption of Annexation Ordinance 4321 occurred on September 19, 1995 after substantial debate and revision at that meeting and at the three prior [City Council] meetings (August 1, August 15, and September 5, 1995) at which the ordinance was discussed."

### A. Quo Warranto Action

At the outset, we consider the City's argument that the Appellants' claim is essentially an attack on the validity of Ordinance 4321 based upon procedural defects, which must have been brought through the *quo warranto* procedure rather than through an action for declaratory judgment.

Prior to 1955, "the primary method in Tennessee for annexation of new territory to the borders of a municipality was by private act of the General Assembly. *Highwoods Props., Inc. v. City of Memphis*, 297 S.W.3d 695, 703 (Tenn. 2009) (citations omitted). However, in 1955, to facilitate a municipality's need to "'plan for its orderly growth and development[,]'" *id.* (quoting *City of Kingsport v. State ex rel. Crown Enters., Inc.*, 562 S.W.2d 808, 814 (Tenn. 1978)), and "to increase the power of municipalities to deal with developments on their peripheries[,]" our legislature "establish[ed] a general law governing the annexation of land to the borders of existing municipalities" via, among other mechanisms, ordinance of the annexing municipality. *Id.* at 704 (citing Tenn. Code Ann. § 6-51-102).

A municipality's decision to annex, however, does not go into effect immediately upon passage of an ordinance. *Town of Huntsville v. Scott County*, 269 S.W.3d 57, 61 n.5 (Tenn. Ct. App. 2008) (citing *City of Knoxville v. Knox County*, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at *3 (Tenn. Ct. App. Feb. 20, 2008) *perm. app. denied* (Tenn. Aug. 25, 2008)). The ordinance becomes operative thirty days after final passage, as aggrieved property owners may contest annexation during this thirty-day period. *Id.* (citing *City of Knoxville*, 2008 WL 465265, at *3). Specifically, the 1955 Act granted "'[a]ny aggrieved owner of property lying within the territory[6] which is the subject of an annexation ordinance' a right to challenge the ordinance via a timely filed *quo warranto* action alleging that the

---

[6]The Act has since been extended to allow "[a]n aggrieved *owner of property that borders* . . . territory that is the subject of an annexation ordinance" to bring a *quo warranto* action. **Tenn. Code Ann. § 6-51-103(a)(1)(A)** (emphasis added).

annexation 'reasonably may not be deemed necessary for the welfare of the residents and property owners of the affected territory and the municipality as a whole and so constitute[s] an exercise of power not conferred by law.'" *Id.* (quoting Act of Mar. 1, 1955, § 2(b)) (footnote omitted). However, "[t]he right to challenge an annexation is [] a 'statutory right' that 'in its very origin is limited.'" *Id.* (citing *Brent v. Town of Greeneville*, 309 S.W.2d 121, 123 (Tenn. 1957)); *see also Southwest Tenn. Elec. Membership Corp. v. City of Jackson*, 359 S.W.3d 590, 604 (Tenn. Ct. App. 2010) ("[O]ur Courts have consistently held that the statutory right to challenge an annexation is very limited.") (citing *Highwoods*, 297 S.W.3d at 707-08).

Our Supreme Court has stated that "'[w]ithin the four corners of [the *quo warranto*] statute lies the entire jurisdiction and authority of the Courts to review the actions of municipalities in enacting annexation ordinances.'" *Id.* (quoting *City of Oak Ridge v. Roane County*, 563 S.W.2d 895, 897 (Tenn. 1978)). Accordingly, "'the courts have no power to vacate an annexation ordinance for purely procedural defects,' because no such authority has been granted by statute.'" *Id.* (quoting *City of Watauga v. City of Johnson City*, 589 S.W.2d 901, 906 (Tenn. 1979)). Instead, "the general rule is that defects in an annexation ordinance must be presented in the context of a challenge to its reasonableness or necessity by way of a timely *quo warranto* challenge." *Id.* (citing *City of Oak Ridge*, 563 S.W.2d at 898; *City of Knoxville v. State ex rel. Graves*, 341 S.W.2d 718, 721 (Tenn. 1960) ("holding that allegation that ordinance was passed without a public hearing 'should be considered in connection with the question of the reasonableness of the ordinance.'")).

Again, in this case, the City argues that Appellants' claims of an Open Meetings Act violation are essentially allegations of "procedural defects" which must be brought in a *quo warranto* proceeding, and that their declaratory judgment action is merely an attempt to circumvent the *quo warranto* procedure, including its statute of limitations.

In *Blount v. City of Memphis*, No. W2006-01191-COA-R3-CV, 2007 WL 1094155, at *4 (Tenn. Ct. App. Apr. 13, 2007) (no Tenn. R. App. P. 11 application filed), this Court considered the permissibility of a declaratory judgment action to pursue an Open Meetings Act violation claim. In *Blount*, plaintiffs filed a timely *quo warranto* action opposing the city's annexation. *Id.* at *1. Following negotiations between the plaintiffs and the city, a consent judgment was entered. *Id.* On the date the consent judgment was entered, the appellant, who did not file a *quo warranto* action, moved to stay the judgment and to intervene in the original action, but the appellant's motions were denied. *Id.*

On appeal, the appellant argued that the consent order improperly modified the annexation ordinance in violation of the Open Meetings Act. *Id.* at *3. In determining that the appellant's failure to file a *quo warranto* action did not, ipso facto, preclude his claim,

we stated:

> Although an action challenging the reasonableness of an annexation ordinance must be brought pursuant to [Tennessee Code Annotated section] 6-51-102, an action challenging the validity of an ordinance alleged to be void may be brought outside the *quo warranto* procedures. *State ex rel. Earhart v. City of Bristol*, 970 S.W.2d 948, 954 (Tenn. 1954). The *Earhart* court held that a declaratory judgment action may be maintained to challenge "the validity of an annexation ordinance alleged to exceed the authority delegated by the legislature." *Id.*

*Id.* at \*4. Ultimately, though, we affirmed the trial court's denial of the appellant's motion to intervene, finding that the appellant's status remained unchanged by the consent agreement–that is, under both the original annexation ordinance and the consent order, the appellant's property fell within the annexation area. *Id.*

More recently, however, our Supreme Court, in *Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695 (Tenn. 2009), expressly limited the *Earhart* decision upon which our *Blount* opinion relied.[7]

> In *State ex rel. Earhart v. City of Bristol* . . . we recognized an exception (other than a constitutional challenge) to the rule [that defects in an annexation ordinance must be presented by way of a timely *quo warranto* challenge] and held that, in certain situations where no *quo warranto* action is statutorily available, it is permissible to challenge an ordinance's validity with a declaratory judgment action. 970 S.W.2d at 953. In *Earhart* the validity of an ordinance enacted several years earlier was challenged because the annexed area contained no "people, private property, or commercial activity." *Id.* at 954; *see State ex rel. Collier v. City of Pigeon Forge*, 599 S.W.2d 545, 547 (Tenn. 1980) ("[L]ong and lean . . . annexations, *so long as they take in people, private property,* or *commercial activities* and rest on some reasonable and rational basis, are not per se to be condemned." (emphasis added)). Annexations containing no people, private property, or commercial activities, by necessity, cannot be challenged in a *quo warranto* action, because only an "aggrieved *owner of property* that borders or lies within territory that is the subject of an annexation ordinance prior to the operative date thereof" may file such a challenge. Tenn. Code Ann. § 6-5-103(a)(1)(A) (emphasis added). We

---

[7]No application for permission to appeal to the Supreme Court was filed in *Blount*, and the *Highwoods* majority did not address the *Blount* opinion.

held, therefore, [in *Earhart*,] that the action for declaratory judgment was permissible, but limited our holding in two key ways. First, we permitted only challenges to ultra vires acts, that is, tests of "[t]he validity of an annexation ordinance alleged to exceed the authority delegated by the legislature." *Earhart*, 970 S.W.2d at 954. Second, we stated that it is only "*where the* quo warranto *proceeding is not available*, [that] alternative equitable remedies are not barred." *Id.* at 952 (citing 65 Am.Jur.2d Quo Warranto § 7 (1972) ("[W]here the remedy by *quo warranto* is available, it is usually held that there is no concurrent remedy in equity, unless by virtue of statutory provision.")) (emphasis added). . . .

We completely agree with the assessment of the Court of Appeals that our limited holding in *Earhart* did not overrule the longstanding principle, articulated in those cases, that Tennessee courts have no authority to vacate an annexation based on procedural defects, except insofar as those defects bears on the questions presented in a timely *quo warranto* action.

*Id.* at 708-09.

In *Highwoods*, the plaintiffs challenged the delayed effective date of annexation. The Court classified this challenge as a claimed "procedural defect" rather than a claimed "ultra vires act," and therefore, it held that the plaintiffs' claims must have been presented in a *quo warranto* proceeding. *Id.* at 709. Furthermore, the Court explained that the plaintiffs "cannot avail themselves of *Earhart* because they, unlike the claimants in *Earhart*, could have filed a timely *quo warranto* challenge." *Id.* (footnote omitted). The Court stated that

"Subject to some exceptions, a declaratory judgment action should not be considered where special statutory proceedings provide an adequate remedy." *Colonial Pipeline* [*Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008)] (citing *Katzenbach v. McClung*, 379 U.S. 294, 296, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964)).

The *quo warranto* procedures established by the General Assembly are the product of over half a century of experience and reflect a careful balance between the interests of municipalities and the concerns of individuals who object to the annexation of their property. This legislative remedy "avoid[s] the specter of numerous successive suits by private parties attacking the validity of annexations," "because the judgment settles the validity of the annexation on behalf of all property holders in the affected area." *Earhart*,

-11-

970 S.W.2d at 952 (quoting *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 437 (Tex. 1991)). To sustain the propriety of this litigation would permit the piecemeal litigation that the *quo warranto* procedures are designed to prevent.

*Id.*

Again, in the instant case, the specific deficiencies alleged by Appellants to support an invalidation of Ordinance 4321 are unclear. But, Appellants' claims unquestionably relate to alleged errors in the annexation hearings. "In the past, our Supreme Court has determined that errors in notice, public hearings and plans of service fall within the ambit of "procedural defects[,]" *Southwest Tenn. Elec. Mem., Corp.*, 359 S.W.3d at 604 (citing *City of Watauga*, 589 S.W.2d at 905) and "courts have no power to vacate an annexation ordinance for purely procedural defects." *City of Watauga*, 589 S.W.2d at 906. Because the Appellants do not allege that Ordinance 4321 adopted by the City Council "exceeded the authority delegated by the legislature," and the grounds raised for invalidating Ordinance 4321 are properly classified as "procedural defects," Appellants were required to challenge the Ordinance 4321 through the *quo warranto* procedure.

Moreover, Appellants have not satisfactorily demonstrated that they were unable to utilize the *quo warranto* procedure. The Appellants undisputedly had standing pursuant to Tennessee Code Annotated section 6-51-103(a)(1)(A), as bordering property owners, to bring a *quo warranto* action. In their brief to this Court, Appellants state that Ordinance 4321 "did not 'surface' until <u>after</u> the passage of more than 30 days, the time allowed for filing a 'quo warranto' lawsuit." However, Appellants provide no citation to evidence within the record to support this assertion.[8]

In sum, we find that Appellants' challenges to Ordinance 4321 were among the type which should have been raised in a *quo warranto* proceeding, and Appellants have failed to

---

[8]In their reply brief, Appellants claim that "the Answer filed by the City's Attorney in the *Coleman* case on November 1, 1995, admitted that the version of Ordinance 4321 which <u>included</u> Bridgewater, was a true copy of Annexation Ordinance 4321[,]" and Appellants have attached a copy of the City's Answer in that case to their brief. However, "[i]t is settled law that documents merely attached to appellate briefs cannot be considered by this Court because they are not properly part of the certified record." *Myers v. State*, No. M2004-02411-CCA-MR3-PC, 2005 WL 1541870, at *5 n.7 (Tenn. Crim. App. June 29, 2005) (citing *State v. Matthews*, 805 S.W.2d 776, 783-84 (Tenn. Crim. App. 1990)). At any rate, without an accompanying complaint, the attached answer does not evidence an admission regarding the Ordinance language.

sufficiently demonstrate that they could not have filed a timely *quo warranto* action.[9] Permitting Appellants, who allowed their special statutory *quo warranto* action to expire, to file an action for declaratory judgment more than six years post-annexation would thwart the purpose of the *quo warranto* procedures established by the General Assembly: to "'avoid[] the specter of numerous successive suits by private parties attacking the validity of annexations,'" by "'settl[ing] the validity of the annexation on behalf of all property holders in the affected area.'" ***McMillan***, 2009 WL 4041660, at *3 (quoting *Earhart*, 970 S.W.2d at 952).

## B. Applicable Statute of Limitations

Even if we assume, *arguendo*, that Appellants were entitled to bring a declaratory judgment action, that action is, nonetheless, time-barred. "There is no universal statute of limitations applicable to all actions for declaratory judgment." ***Witty v. Cantrell***, No. E2010-02303-COA-R3-CV, 2011 WL 2570754, at *9 (Tenn. Ct. App. June 29, 2011) (citing *Hughley v. State*, 208 S.W.3d 388, 395 (Tenn. 2006)). However, "'when a petition for declaratory judgment seeks the same relief that is otherwise available in another statutory proceeding, then the filing of the declaratory judgment is governed by the statute of limitations governing that statutory proceeding.'" ***Hughley***, 208 S.W.3d at 395 (quoting *Newsome v. White*, No. M2001-03014-COA-R3-CV, 2003 WL 22994288, at *4 (Tenn. Ct. App. Dec. 22, 2003)). In their brief, Plaintiffs argue, without further explanation, that the *quo warranto* statute of limitation should not be applied to their declaratory judgment claims because "the relief sought is . . . different." Despite their limited protestation to the contrary, Plaintiffs are clearly seeking invalidation of Ordinance 4321–the relief available in a *quo warranto* proceeding. Accordingly, we find that even if an action for declaratory judgment is a proper vehicle for Plaintiffs' claims, Plaintiffs' petition for declaratory judgment filed in May 2002, was well beyond the *quo warranto* limitation period, and is time-barred. Plaintiffs' claims against the City of Memphis are dismissed and the trial court's upholding of Ordinance 4321 is affirmed. All remaining issues are pretermitted.

---

[9]As support for its contention that Plaintiffs could have filed a *quo warranto* action, the City points out that other plaintiff property owners challenged the validity of Ordinance 4321 in a timely *quo warranto* action. ***See Coleman v. City of Memphis***, No. W2000-02865-COA-R3-CV, 2001 WL 1381277 (Tenn. Ct. App. Nov. 5, 2001) *perm. app. denied* (Tenn. Apr. 29, 2002). However, we do not consider the previous *quo warranto* action here, because this Court has previously noted that "the [*quo warranto*] complainants in *Coleman* challenged the validity of the ordinance read on August 1, 1995, and not the final version of the ordinance passed on September 19, 1995." ***Allen***, 2004 WL 1402553, at *3.

## V.   CONCLUSION

For the aforementioned reasons, we dismiss the Plaintiffs' claims against the City of Memphis and thus, we affirm the trial court's upholding of Ordinance 4321.  All remaining issues are pretermitted.   Costs of this appeal are taxed to Appellants, Dennis Allen, et al., and their surety, for which execution may issue if necessary.   This case is remanded, pursuant to applicable law, for collection of costs assessed by the trial court.

ALAN E. HIGHERS, P.J., W.S.