IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 30, 2014

## DOYLE S. SILLIMAN, ET AL. V. CITY OF MEMPHIS

**Appeal from the Chancery Court for Shelby County**
**No. CH1102423, CH1102443, CH1102431      Walter L. Evans, Chancellor**

_____

**No. W2013-02858-COA-R3-CV - July 2, 2014**

_____

In this case, we are called upon to review the trial court's decision to set aside a consent order regarding an annexation on the basis of the subsequent passage of legislation allegedly affecting the agreed-upon annexation. Because we conclude that Tennessee Code Annotated Section 6-51-122 does not apply to prohibit the annexation ordinance at issue, we reverse the trial court's judgment and reinstate the consent order.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Allan J. Wade and Brandy S. Parrish, Memphis, Tennessee, for the appellant, The City of Memphis.

Ricky E. Wilkins and Sharon H. Loy, Memphis, Tennessee, for the appellees, Doyle S. Silliman, Larry Sawyer, Wanda Sawyer, Harry E. Smith, III, Kathleen J. Smith, Robert E. Teutsch, Marilyn Williams, Frank G. Witherspoon, Martha C. Witherspoon.

**OPINION**

**Background**

At some point prior to June 2006, the Defendant/Appellant City of Memphis ("the City") enacted Ordinance No. 4513 ("the Ordinance"), thereby annexing into the City the

property described in the Ordinance, commonly known as the Southwind Annexation Area. Plaintiffs/Appellees Doyle S. Silliman, Marilyn Williams, Harry E. Smith, III, Kathleen J. Smith, Larry Sawyer, Wanda Sawyer, Robert E. Teutsch, Roslyn M. Teutsch, Frank G. Witherspoon, and Martha C. Witherspoon (collectively, "Appellees"), on behalf of themselves and other similarly situated property owners, filed three separate *quo warranto*[1] actions challenging the legality and reasonableness of the annexation pursuant to Tennessee Code Annotated Section 6-51-103. The lawsuits were later consolidated pursuant to Tennessee Code Annotated Section 6-51-103(d).[2]

On June 8, 2006, Appellees and the City entered into a consent order, captioned "Amended Consent Final Judgment," which allowed the annexation of the Southwind Annexation Area to move forward. The consent order stated that "[w]ithin the time frame established [herein], the validity of Ordinance No. 4513 is sustained. To determine the effective dates of the annexation, the parties divided the area contained in the Southwind Annexation Area into five subsections and provided the effective annexation dates for each area. Specifically at issue in this case were the areas known as "B1 and B2." The consent order indicates that the annexation would occur on December 31, 2013. In addition, the consent order specifically includes terms that the parties could not appeal the consent order, and that the order was a final judgment disposing of all matters in dispute.

Several years passed. On May 16, 2013, the Tennessee General Assembly passed new legislation , which appeared to establish an annexation moratorium preventing municipalities from extending their corporate limits by means of annexation by ordinance from April 15, 2013 through May 15, 2014. *See generally* Tenn. Code Ann.§ 6-51-122 (including certain exceptions not pled in this case). Thereafter, on December 19, 2013, less than two weeks from when the annexation was to become effective, the Appellees filed a motion captioned "Combined Petition and Memorandum in Support of Injunctive Relief and Relief from Amended Consent Final Judgment." In their motion, which concerned only the areas known as B1 and B2, the Appellees asked the trial court to set aside the consent order allowing the annexation of these areas, which annexation was to occur on December 31, 2013. As the

---

[1] The appropriate method to challenge the reasonableness and necessity of an annexation ordinance is through a timely filed *quo warranto* action. *See **Town of Huntsville v. Scott County**,* 269 S.W.3d 57, 61 & n. 5 (Tenn. Ct. App. 2008). The term "*quo warranto*" is Latin for "by what authority." Bryan A. Garner, *A Modern Legal Dictionary* 731 (2d ed. 1995) (noting that a *quo warranto* proceeding is "generally used to inquire into the authority by which a public office is held or franchise is claimed").

[2] Tennessee Code Annotated Section 6-51-103(d) provides, in pertinent part: "If more than one (1) suit is filed, all of them shall be consolidated and tried as one (1) in the first court of appropriate jurisdiction in which suit is filed."

ground for their petition, Appellees relied upon Rule 60.02 of the Tennessee Rules of Civil Procedure, arguing that the General Assembly's intervening enactment of Tennessee Code Annotated Section 6-51-122 prevented the City from annexing any property by ordinance until after May 15, 2014. The Appellees also asked that the trial court enter an injunction preventing the City from annexing the subject property until May 16, 2014. The City filed a response denying that the Appellees were entitled to relief.

On December 23, 2013, the trial court granted the Appellees' motion to set aside the consent judgment, as well as their request for an injunction preventing the City from annexing the subject property until the expiration of the statutory moratorium. On the same day, the City filed a motion for a stay pending appeal, which was denied by the trial court. The City subsequently filed its notice of appeal to this Court.[34]

### Issues Presented

The City raises several issues for review, which are taken, and slightly altered, from its brief:

1. Whether the trial court erred by granting Appellees relief from the Amended Consent Final Judgment entered June 8, 2006 pursuant to Rule 60.02?

2. Whether the provisions of Tennessee Code Annotated Section 6-51-122 preclude implementation of the City's Annexation Ordinance No. 4513 on December 31, 2013 as provided in the June 8, 2006 Amended Consent Final Judgment?

3. Whether the Tennessee Constitution's prohibition against retroactive laws precludes Tennessee Code Annotated

---

[3] Initially, on December 23, 2013, the City filed an application for an extraordinary appeal with this Court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. The City specifically noted that it was unsure as to whether the trial court's order constituted a final judgment pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure. On January 6, 2014, this Court denied the application for extraordinary appeal on the basis that "Applicant concedes that the order appealed is a final judgment and should be appealed pursuant to Rule 3 . . . ." The City subsequently filed its notice of appeal to this Court pursuant to Rule 3. We have independently reviewed the record and agree with the City that the trial court's December 23, 2013 order was a final, appealable judgment. *See* Tenn. R. App. P. 13(b) ("The appellate court shall also consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review[.]"). Thus, we consider this appeal pursuant to Rule 3.

[4] Pending appeal, the City also sought a stay of the trial court's order pending appeal from this Court. This Court denied the request by order of January 31, 2014.

section 6-51-122 from impairing the vested rights of the City created by the June 8, 2006 Amended Consent Final Judgment?

4. Whether Appellees are entitled to a modification of the Amended Consent Final Judgment based on the subsequent enactment of Tennessee Code Annotated Section 6-51-122?

5. Whether the trial court erred in granting Appellees' request for injunctive relief?

In the posture of appellee, the Appellees also raise an issue as to the mootness of this appeal. As we perceive it, however, there are three issues in this case:

1. Whether the mootness doctrine demands dismissal of this appeal?
2. Whether the trial court had subject matter jurisdiction to set aside the final consent order?
3. Whether the trial court abused its discretion in setting aside the final consent order?

**Analysis**

**Subject Matter Jurisdiction**

We begin with the Appellees' assertion that this Court lacks subject matter jurisdiction over this appeal because the controversy has been rendered moot. Specifically, the Appellees argue that because the trial court's injunction only prevents the City from attempting to annex the Southwind Annexation Area until May 16, 2014, a date which had passed at the time this case was submitted to the Court on briefs, there is no remaining impediment to the annexation of the subject property. Because the City is no longer enjoined from taking steps to annex the Southwind Annexation Area by ordinance, the Appellees argue that this Court can offer no relief to the City to which they are not already entitled.

Our Supreme Court recently discussed the intertwining issues of justiciability and mootness:

> This Court must first consider questions pertaining to justiciability before proceeding to the merits of any remaining claims. *See UT Med. Grp., Inc. v. Vogt*, 235 S.W.3d 110, 119 (Tenn. 2007) (noting that justiciability is a threshold inquiry). The role of our courts is limited to deciding issues that qualify as justiciable, meaning issues that place some real interest in

-4-

dispute, *Colonial Pipeline Co. v. Morgan*, 263 S.W.3d 827, 838 (Tenn. 2008), and are not merely "theoretical or abstract," *Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S .W.3d 196, 203 (Tenn. 2009). A justiciable issue is one that gives rise to "a genuine, existing controversy requiring the adjudication of presently existing rights." *Vogt*, 235 S.W.3d at 119.

\* \* \*

To be justiciable, an issue must be cognizable not only at the inception of the litigation but also throughout its pendency. *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 203–04. An issue becomes moot if an event occurring after the commencement of the case extinguishes the legal controversy attached to the issue, *Lufkin v. Bd. of Prof'l Responsibility*, 336 S.W.3d 223, 226 (Tenn. 2011), or otherwise prevents the prevailing party from receiving meaningful relief in the event of a favorable judgment, *see Knott v. Stewart Cnty.*, 207 S.W.2d 337, 338 (Tenn. 1948); *Cnty. of Shelby v. McWherter*, 936 S.W.2d 923, 931 (Tenn. Ct. App. 1996). This Court has recognized a limited number of exceptional circumstances that make it appropriate to address the merits of an issue notwithstanding its ostensible mootness: (1) when the issue is of great public importance or affects the administration of justice; (2) when the challenged conduct is capable of repetition and evades judicial review; (3) when the primary dispute is moot but collateral consequences persist; and (4) when a litigant has voluntarily ceased the challenged conduct. *Lufkin*, 336 S.W.3d at 226 n.5 (citing *Norma Faye Pyles Lynch Family Purpose LLC*, 301 S.W.3d at 204).

*City of Memphis v. Hargett*, 414 S.W .3d 88, 96 (Tenn. 2013). Thus, the Appellees argue that the City's appeal is moot because this Court can offer the City no "meaningful relief in the event of a favorable judgment." *Id.* (citing *Knott*, 207 S.W.2d at 338).

The City, in contrast, argues that this case is not moot, as the City would receive "meaningful relief in the event of a favorable judgment." *Id.* (citing *Knott*, 207 S.W.2d at 338). Specifically, the City argues that if this Court were to determine either that the trial court did not have the power to alter the terms of the consent judgment, or that the trial court

abused its discretion in enjoining the City from proceeding to annex the Southwind Annexation Area, the prior consent judgment, in which the annexation was to take place on December 31, 2013, would be reinstated. Because the consent judgment contains no requirement that the City take any affirmative action to effectuate the annexation, the City asserts that "vacating the trial court's recent order [enjoining the annexation] will automatically implement the December 31, 2013 annexation of areas B1 and B2 of the Southwind Annexation Area pursuant to the June 8, 2006 [c]onsent [j]udgement." If the consent judgment is reinstated, including the December 31, 2013 effective date of the annexation, the City asserts that it would be entitled to collect property taxes from the subject property for the entire fiscal year of 2014. If, however, the City is only entitled to annex areas B1 and B2 of the Southwind Annexation Area after May 16, 2014, then the City would not be allowed to collect property taxes for the 2014 fiscal year. *See* Tenn. Code Ann. § 67-5-504(c) ("Any annexing municipality that makes assessments of taxes shall only assess the tax on real property within the annexed territory if the annexation takes effect prior to January 1 of the year in which the assessment is made").

To support its argument that to reverse or vacate the trial court's order setting aside the consent judgment would be to reinstate the June 8, 2006 consent judgment, the City relies on this Court's opinion in **West v. Luna**, No. 01A01-9707-CH-00281, 1998 WL 467106 (Tenn. Ct. App. Aug. 12, 1998). In **Luna**, the defendant operated a dirt race track in Lincoln County. Six years prior to the instant litigation, the track had been enjoined from operating at a noise level that amounted to a nuisance. **Id.** at *1. When the track was sold to a new owner, the track's neighbors filed another lawsuit to enjoin the track's new owner from conducting any stock car races on the property because of their belief that the noise would create nuisance. **Id.** at *1–*2. The trial court agreed with the neighbors and enjoined the track's new owner from conducting races of any sort on the property. **Id.** at *2. This Court vacated the second injunction on the ground that it was overly broad. On appeal, however, the neighbors argued that the vacatur would result in no limits on the amount of noise emanating from the track. **Id.** at *8. To the contrary, the Court, led by Judge, now Justice, William C. Koch, held that the vacatur of the second injunction had the effect of reinstating the initial injunction:

> Our decision to vacate the August 1996 order does not leave [the track's new owner] to conduct stock car races as he pleases. To the contrary, vacating the August 1996 order has the legal effect of reinstating the May 1982 order that enjoins the track operators from operating the track "until such time as . . . [they] can and will operate same where the noise level will not be a nuisance to the plaintiffs." Thus, [the track's new owner], remains enjoined from operating the track in a way that causes

-6-

a nuisance to the track's neighbors.

*Id.* The Court then remanded the matter to the trial court to determine some "objective, well-defined noise levels suitable for the locality and the character of the surrounding neighborhood as well as the time of day when the races will be conducted" upon which the question of nuisance could be judged. *Id.* at *9.

The City argues that, based upon the holding in **Luna**, the effect of any decision in this Court reversing or vacating the trial court's decision to set aside the consent order will result in the reinstatement of the June 8, 2006 consent judgment. Because the June 8, 2006 consent judgment provides that annexation will occur on December 31, 2013, with no intervening action required by any party, the City argues that reinstatement of the consent judgment will allow the City to collect property taxes from areas B1 and B2 of the Southwind Annexation area for the 2014 fiscal year, pursuant to Tennessee Code Annotated Section 67-5-504(c). Thus, the City argues that this Court can offer the City meaningful relief in the event of a favorable judgment.

We agree with the City regarding the effect of a judgment in its favor. As explained in **Luna**, were this Court to vacate or reverse the trial court's decision setting aside the June 8, 2006 consent order, the effect would be to reinstate the consent order based upon its prior terms. *See id.* at *8. Other courts have indicated agreement with the proposition that vacatur or reversal of a subsequent order may result in reinstatement of the earlier status quo. *See* **Lenoir v. Hardin's-Sysco Food Services, LLC**, No. W2012-02386-COA-R3-CV, 2013 WL 5884661, at *5 (Tenn. Ct. App. Oct. 31, 2013) (concerning an order of an administrative law judge); **Holley v. Blackett**, No. W2011-02115-COA-R3-CV, 2012 WL 4799053, at *5 (Tenn. Ct. App. Oct. 10, 2012) (reversing the trial court's order of dismissal and expressly reinstating a prior order); **Forbes v. Forbes**, No. W2005-00694-COA-R3-CV, 2005 WL 2416660, at *7 (Tenn. Ct. App. Sept. 30, 2005) (reversing the trial court's order construing the parties' marital dissolution agreements and expressly reinstating a previous order); **Bilbrey v. Worley**, 165 S.W.3d 607, 622–23 (Tenn. Ct. App. 2004) (reversing the trial court's final judgment and expressly reinstating the trial court's initial judgment); *see also* **General Medicine, P.C. v. Horizon/CMS Health Care Corp.**, 475 Fed.Appx. 65, 76 (6th Cir. 2012) (reversing the district court's decision to set aside a consent judgment and expressly reinstating the consent judgment). Because a reversal or vacatur of the trial court's decision to set aside the June 8, 2006 consent judgment will have the effect of reinstating that judgment, we cannot agree with the Appellees that this action can provide the City no meaningful appellate review. The Appellees' request that we dismiss this appeal for lack of subject matter jurisdiction is, therefore, denied. Accordingly, we go on to consider the substantive issues raised in this appeal.

## Rule 60.02

The substantive issues in this case concern the Appellees' entitlement to relief pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure. Rule 60.02 provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

We begin with a brief explanation of the law in Tennessee concerning Rule 60.02, as recently explained by our Supreme Court:

> [W]e have characterized relief under Rule 60.02 as an "exceptional remedy," *Nails v. Aetna Ins. Co.*, 834 S.W.2d 289, 294 (Tenn. 1992), "designed to strike a proper balance between the competing principles of finality and justice," *Jerkins v. McKinney*, 533 S.W.2d 275, 280 (Tenn. 1976). Rule 60.02 provides an "escape valve," *Thompson v. Firemen's Fund Ins. Co.*, 798 S.W.2d 235, 238 (Tenn. 1990), that "should not be easily opened." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991). We have reversed relief granted under Rule 60.02 where the judgment was "not oppressive or onerous." *Killion v. Tenn. Dep't of Human Servs.*, 845 S.W.2d 212, 214 (Tenn. 1992). "[R]elief under Rule 60.02 is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order, nor by a party who is merely dissatisfied with a particular outcome." *Henderson*, 318 S.W.3d at 336.

A party seeking relief under Rule 60.02 must substantiate the request with clear and convincing evidence. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn. Ct. App. 1997). "Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992). "In other words, the evidence must be such that the truth of the facts asserted [is] 'highly probable.' " *Goff v. Elmo Greer & Sons Constr. Co.*, 297 S.W.3d 175, 187 (Tenn. 2009) (quoting *Teter v. Republic Parking Sys., Inc.*, 181 S.W.3d 330, 341 (Tenn.2005)). In general, "the bar for attaining relief is set very high and the burden borne by the movant is heavy." *Johnson v. Johnson*, 37 S.W.3d 892, 895 n. 2 (Tenn.2001).

All motions for relief based on Rule 60.02 "shall be made within a reasonable time." Tenn. R. Civ. P. 60.02. Motions based on Rule 60.02(1) or (2) shall be made "not more than one year after the judgment, order or proceeding was entered or taken." Tenn. R. Civ. P. 60.02. In other words, "[o]ne year is the 'outer limit on the time allowed for filing the motion' under 60.02(1) or 60.02(2)." *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001) (quoting *Ellison v. Alley*, 902 S.W.2d 415, 417 (Tenn. Ct. App. 1995)). Rule 60.02 does not "permit a litigant to slumber on her claims and then belatedly attempt to relitigate issues long since laid to rest." *Thompson*, 798 S.W.2d at 238.

*Furlough v. Spherion Atlantic Workforce, L.L.C.*, 397 S.W.3d 114, 127–28 (Tenn. 2013).

In this case, the Appellees have requested relief from the consent order specifically pursuant to Rule 60.02(5), "any other reason justifying relief from the operation of the judgment." Tenn. R. Civ. P. R. 60.02(5). As explained by the Tennessee Supreme Court:

Although motions based on Rule 60.02(5) are subject only to the "reasonable time" limitation, Tenn. R. Civ. P. 60.02; *see also Rogers*, 50 S.W.3d at 446, Rule 60.02(5) has been construed narrowly by Tennessee's courts. *See Holiday v. Shoney's South, Inc.*, 42 S.W.3d 90, 94 (Tenn. Ct. App. 2000) (citing *Underwood v. Zurich Ins. Co.*, 854 S.W.2d 94, 97 (Tenn. 1993)). Rule 60.02(5) does not "relieve a party from his

or her free, calculated, and deliberate choices." ***Id.*** Instead, the rule "affords relief in the most extreme, unique, exceptional, or extraordinary cases and generally applies only to circumstances other than those contemplated in sections (1) through (4) of Rule 60.02." ***Holiday***, 42 S.W.3d at 94. An untimely request under Rule 60.02(1) or (2) may not be asserted under Rule 60.02(5). ***Wallace v. Aetna Life & Cas. Co.***, 666 S.W.2d 66, 67 (Tenn.1984); ***Holiday***, 42 S.W.3d at 94; ***Henderson v. Kirby***, 944 S.W.2d 602, 605 (Tenn. Ct. App. 1996). Relief under Rule 60.02(5) is not proper "simply because relief under other provisions is time barred." ***Wallace***, 666 S.W.2d at 67.

***Furlough***, 397 S.W.3d at 128.

We review the trial court's decision to grant a Rule 60.02 motion under the abuse of discretion standard:

A [t]rial [c]ourt's decision to grant or deny relief under Rule 60.02 is reviewed under an abuse of discretion standard. ***Federated Ins. Co. v. Lethcoe***, 18 S.W.3d 621, 624 (Tenn. 2000); ***Under wood v. Zurich Ins. Co.***, 854 S.W.2d 94, 97 (Tenn.1993). In ***Eldridge v. Eldridge***, 42 S.W.3d 82 (Tenn. 2001), our Supreme Court disc

Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000); ***State v. Gilliland***, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998).

***Eldridge***, 42 S.W.3d at 85. Appellate courts ordinarily permit

discretionary decisions to stand even though reasonable judicial minds can differ concerning their soundness. ***Overstreet v. Shoney's, Inc.***, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999). A trial court's discretionary decision must take into account applicable law and be consistent with the facts before the court. ***Id.*** When reviewing a discretionary decision by the trial court, the "appellate courts should begin with the presumption that the decision is correct and should review the evidence in the light most favorable to the decision." ***Id.*** (citations omitted).

***Beason v. Beason***, 120 S.W.3d 833, 839 (Tenn. Ct. App. 2003). With these parameters in mind, we consider the merits of the City's appellate arguments.

## I.

We begin with the City's argument that the trial court was without jurisdiction to set aside the consent judgment pursuant to Rule 60.02(5) due to the contractual nature of consent judgments. As explained by this Court:

> Consent decrees, compromise and settlement agreements, and agreed orders are favored by the courts and represent the achievement of an amicable result to pending litigation. A consent decree signed by the parties involved has been described as "about the most binding of agreements that can be made." ***Bringhurst v. Tual***, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980) (citing ***Smelcer v. Broyles***, 225 Tenn. 187, 465 S.W.2d 355, 356 (Tenn.1971)); ***Boyce v. Stanton***, 83 Tenn. 346, 375–76 (1885)).

***Henderson v. Wilson***, No. M2009-01591-COA-R3-CV, 2011 WL 683905, at \* (Tenn. Ct. App. Feb. 25, 2011). Further, the Tennessee Court of Appeals in ***Bacardi v. Board of Registry of Podiatry***, 124 S.W.3d 553 (Tenn. Ct. App. 2003), stated:

> A consent order is defined as "a solemn contract or judgment of the parties put on file with the sanction and permission of the court." 49 C.J.S. Judgments § 182 (1997). It is well settled in Tennessee that consent orders are valid and binding. ***Underwood v. Zurich Ins. Co.***, 854 S.W.2d 94, 97 (Tenn. 1993). In ***Nance v. Pankey***, 880 S.W.2d 944, 946 (Tenn. Ct. App. 1993), this Court stated:

> [A consent] order is conclusive upon the consenting parties, and can neither be amended nor in any way varied without like consent; nor can it be reheard, appealed from or reviewed upon writ of error. After a consent decree has become final it can only be attacked by a suit against the counsel who consented to it or by a bill of review or some original action. ***Kelly v. Walker,*** 208 Tenn. 388, 346 S.W.2d 253, 255–56 (1961); *see also **City of Shelbyville v. State ex rel. Bedford County***, 220 Tenn. 197, 415 S.W.2d 139, 144 (1967).

Moreover, in ***Gardiner v. Word***, 731 S.W.2d 889, 893 (Tenn. 1987), our Supreme Court reaffirmed the validity of consent orders and stated that "the reason for the unassailability of a consent decree is based on the well-founded maxim volenti non fit injuria (he who consents to what is done cannot complain of it)." *See also **Rachels v. Steele***, 633 S.W.2d 473, 477 (Tenn. Ct. App. 1981).

***Bacardi***, 124 S.W.3d at 562. According to *American Jurisprudence*:

> Consent decrees have attributes both of contracts and of judicial decrees. Because of this dual character, consent decrees may be treated as contracts for some purposes but not for others. Consequently, a consent judgment is subject to many of the rules relating to the interpretation and enforcement of contracts as well as those governing the form, entry, and effect of judgments.
>
> Consent decrees closely resemble contracts because their terms are arrived at through mutual agreement of the parties. Even though a consent judgment receives a court's imprimatur, the judgment is in essence a contract between the parties to the litigation from which it is derived.
>
> Consent decrees do not arise from a judicial determination of the rights of the parties or the merits of the case, and some courts hold that a consent decree does not purport to represent the judgment of the court but is merely a recital of an agreement.
>
> A valid offer of judgment, when accepted, is a contract,

but it is not treated as a mere contract. The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute or disputes at rest and that, upon this agreement, the court has entered judgment conforming the terms of the agreement.

46 Am. Jur. 2d Judgments § 186 (footnotes omitted).

Thus, the City argues that because the consent judgment is in the nature of a contract, the Appellees may not be relieved of their agreement absent some showing of fraud, which has never been alleged. We respectfully disagree. In two fairly recent cases in this Court, we have considered the merits of a Rule 60.02 request for relief from a final judgment when the judgment was entered by the consent of the parties. *See State ex rel. Hickman v. Dodd*, No. W2008-00534-COA-R3-CV, 2008 WL 4963508, at *3 (Tenn. Ct. App. Nov. 21, 2008) (considered Rule 60.02 with regard to a consent order; reversed trial court's decision to grant relief from consent order); *State ex rel. Johnson v. Mayfield*, No. W2005-02709-COA-R3-JV, 2006 WL 3041865, at *3–4 (Tenn. Ct. App. Oct. 26, 2006) (considered Rule 60.02 with regard to a consent order; affirmed trial court's decision to grant relief from consent order). Both cases involved a consent order acknowledging paternity of a child and establishing child support. *Hickman*, 2008 WL 4963508, at *1; *Mayfield*, 2006 WL 3041865, at *1–4. However, subsequent DNA testing revealed that neither putative father was the biological parent of the child at issue. *Hickman*, 2008 WL 4963508, at *1; *Mayfield*, 2006 WL 3041865, at *1. In both cases, the putative father sought relief from any further child support obligation based upon the fact that the child was not his biological offspring. *Hickman*, 2008 WL 4963508, at *1; *Mayfield*, 2006 WL 3041865, at *1. Both cases considered the putative father's request as a request to set aside a consent order pursuant to Rule 60.02. *Hickman*, 2008 WL 4963508, at *3; *Mayfield*, 2006 WL 3041865, at *3–4. Thus, nothing in either case suggests that Rule 60.02 is inapplicable in a situation where the final judgment sought to be set aside is a consent judgment. *See also In re Kempton L.D.*, No. W2009-00906-COA-R3-JV, 2010 WL 1838058, at 3–4 (Tenn. Ct. App. May 7, 2010) (applying Rule 60.02 to a request for relief from a consent order establishing paternity).

Indeed, our Supreme Court has held that, in the context of workers' compensation claims, litigants may seek relief pursuant to Rule 60.02 from court-approved settlements. *Furlough v. Spherion Atlantic Workforce, L.L.C.*, 397 S.W.3d 114, 127 (Tenn. 2013). The Court noted, however, that such relief is "rare and 'disfavored.'" *Id.* (quoting *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 338 (Tenn. 2010)). Federal courts have likewise held that parties are not precluded from seeking relief from consent judgments simply because consent judgments are contractual in nature. *See Jones v. Professional Motorcycle Escort Service*,

-13-

***L.L.C.***, 193 S.W.3d 564, 570 (Tenn. 2006) ("Federal case law interpreting rules similar to our own are persuasive authority for purposes of construing the Tennessee rule."). For example in ***Northeast Ohio Coalition for Homeless v. Husted***, 696 F.3d 580 (6th Cir. 2012), the United States Court of Appeals for the Sixth Circuit held that:

> While a consent decree "embodies an agreement of the parties and thus in some respects is contractual in nature," it is nonetheless subject to Rule 60(b) [the federal counterpart to Rule 60.02] because it is "a judicial decree that is subject to the rules generally applicable to other judgments and decrees."

***Id.*** at 601 (quoting ***Rufo v. Inmates of Suffolk Cnty. Jail***, 502 U.S. 367, 378, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)). A treatise on the issue explains:

> It is generally recognized in the federal courts that a judgment by consent may be vacated or set aside in the manner provided by law, and the fact that a judgment has been entered by the consent of the parties does not deprive the court of authority to vacate or set aside that judgment when the requisite grounds for so doing exist. In the absence of fraud or mistake, however, a judgment entered by consent ordinarily may not be modified, amended, or corrected in any essential respect without the consent of the parties. Thus, a court cannot give relief to a party who enters into a consent decree or judgment when that consent is knowingly made and when there is not even a suggestion of fraud, misrepresentation, or mistake.
>
> *   *   *
>
> A party seeking modification of a consent decree must establish at least one of the following four factors by a preponderance of the evidence to obtain modification or vacatur: (1) a significant change in factual conditions; (2) a significant change in law; (3) that a decree proves to be unworkable because of unforeseen obstacles; or (4) that enforcement of the decree without modification would be detrimental to the public interest.

35B C.J.S. Federal Civil Procedure § 1283. The rationale for the court's continuing jurisdiction over a consent judgment has been explained by the United States Supreme Court:

[A] court does not abdicate its power to revoke or modify its mandate, if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong. We reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act . . . . The consent is to be read as directed toward events as they then were. It was not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be.

*System Federation No. 91, Ry. Emp. Dept., AFL-CIO v. Wright*, 364 U.S. 642, 81 S.Ct. 368 (U.S. 1961) (quoting *United States v. Swift & Co.*, 286 U.S. 106, 114–15, 52 S.Ct. 460, 76 L.Ed. 999 (1932)). Thus, the mere fact that a judgment was entered by consent will not deprive the court from considering a motion to set aside the judgment pursuant to Rule 60.02.

## II.

The City next argues that the Appellees' Rule 60.02 motion was untimely. As previously discussed, motions pursuant to Rule 60.02(5) are subject to a "reasonable time" limitation. *See* Tenn. R. Civ. P. 60.02; *Furlough*, 397 S.W.3d at 128. The City argues that the Appellees' motion was untimely because it was filed a mere two weeks from the date when the annexation of the Southwind Annexation Area was to take place. In contrast, the Appellees argue that their motion was timely filed because it was filed approximately seven months from the enactment of Tennessee Code Annotated Section 6-51-122, as well as within one month from when the Appellees received notice that the City was planning to move forward with the annexation, notwithstanding the enactment of Tennessee Code Annotated Section 6-51-122.

"Whether a Rule 60.02 [] motion is filed within a reasonable time is a question of fact for the trial court, and this Court will review the trial court's determination under the abuse of discretion standard." *Walker v. Nissan N.A., Inc.*, No. M2009-00273-COA-R3-CV, 2009 WL 2589089, at *2 (Tenn. Ct. App. Aug. 21, 2009) (citing *Rogers v. Estate of Russell*, 50 S.W.3d 441, 445 (Tenn. Ct. App. 2001)).  As previously discussed, a trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Johnson v. Richardson,* 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion.  *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). Because the Appellees' motion was filed approximately seven months from

the enactment of Tennessee Code Annotated Section 6-51-122, and less than one month from when the Appellees received notice that the annexation was to go forward, we cannot conclude that the trial court abused its discretion in considering the Appellees' motion as filed within a reasonable time.

## III.

The City also argues that relief pursuant to Rule 60.02 is inappropriate because an intervening change in the law is not an appropriate ground for relief from a final judgment. Specifically, the City asserts that: "A subsequent change in the law is not sufficient to overcome [the] heavy burden born by those who seek to modify a final consent judgment." To support this argument, the City cites the Tennessee Supreme Court case of *City of Shelbyville v. State ex rel. Bedford County*, 24 McCanless 197, 415 S.W.2d 139 (Tenn. 1967), in which the Court succinctly stated that: "The mere fact the law has changed is no defense [to a consent decree]." *Id.* at 145.

In *Shelbyvillle*, the parties entered into a consent decree by which the city was required to pay the county a portion of tax equivalent revenue, which was intended to compensate for the tax exempt status of the Tennessee Valley Authority ("TVA"). The Tennessee Supreme Court, in 1958, interpreted the 1940 Amendment to the Tennessee Valley Authority Act of 1933 ("TVA Act") to mean that in all contracts entered into after 1940, the city was obligated to share with the county a part of the tax equivalent. *See Rutherford County v. City of Murfreesboro*, 205 Tenn. 362, 326 S.W.2d 653 (1958), *cert. denied*, 361 U.S. 919, 80 S.Ct. 257, 4 L.Ed.2d 187 (1959). Based upon this holding, as well as a United States District Court holding that followed the Tennessee Supreme Court's interpretation in the City of Murfreesboro case, *see City of Tullahoma v. Coffee County*, 204 F.Supp. 794 (E.D. Tenn. 1962), the City of Shelbyville and the County of Bedford entered into a consent order in which the city would pay a portion of the tax equivalent to the county. *Shelbyville*, 415 S.W.2d at 142–43.

After the consent order was entered, however, the United States Court of Appeals for the Sixth Circuit reversed the District Court's interpretation of the TVA Act and held that the TVA Act did not require cities to make distributions under the 1940 Amendment. *See City of Tullahoma v. Coffee County*, 328 F.2d 683 (6th Cir. 1964), *cert. denied*, 379 U.S. 989, 85 S.Ct. 698, 13 L.Ed.2d 609 (1965). After the denial of *certiorari* in the federal action, the City of Shelbyville ceased making payments pursuant to the consent order and the county filed suit to enforce its rights. *Shelbyville*, 415 S.W.2d at 143. The City of Shelbyville, however, argued that the consent order should be set aside because it rested upon a mutual mistake, as the law upon which the consent order was predicated had changed. *Id.* at 144. The trial court held that the consent order was valid and enforceable despite the change in the

courts' interpretation of the TVA Act. *Id.* at 143. The Tennessee Supreme Court affirmed the trial court's ruling, explaining:

> We think there was no mutual mistake under the facts. The parties were fully aware of the facts and the law when the consent decree was entered. The mere fact the law has changed is no defense. The fact that conditions have changed since the date of the decree, without more is insufficient to vary the terms of the decree. . . . While it is true the law with respect to the interpretation of the 1940 amendment has changed the parties have not been mistaken as to it. They knew in 1963, when the decree was entered, the state of the law as well as at the present time.
>
> If it be considered a mistake on the part of the parties, the City would not be entitled to any relief. Equity will not relieve against a mistake of law unless there is some other independent equity in favor of the party seeking relief. *Employers Re-Ins. Corp. v. Going*, 161 Tenn. 79, 26 S.W.2d 126 (1930). The City does not claim any such independent equity.
>
> Moreover, the parties knew at the time the decree was agreed upon there was a possibility the Federal Court might change the interpretation of the amendment.
>
> 'If, therefore a compromise of a doubtful right is fairly made between parties, its validity cannot depend upon any future adjudication of their right. And, where compromises of this sort are fairly entered into, whether the uncertainty rests upon a doubt of fact or a doubt in point of law, if both parties are in the same ignorance, the compromise is equally binding, and cannot be affected by any subsequent investigation and result.' *Trigg v. Read*, 24 Tenn. 529 (1845).
>
> Thus, the City cannot question the validity of the consent decree because of the change in the interpretation of the amendment.

*Shelbyville*, 415 S.W.2d at 145 (some internal citations omitted). Thus, the Tennessee Supreme Court held that a mere change in how a statute is interpreted by the courts is insufficient to serve as a basis to set aside a consent order.

The holding in *Shelbyville* is supported by the federal principle that a judgment cannot be altered by a subsequent change in the decisional law upon which the judgment was

predicated, absent other extraordinary circumstances. *See Black's Law Dictionary* 244 (9th ed. 2009) (defining decisional law as caselaw, or "[t]he law to be found in the collection of reported cases that form all or part of the body of law within a given jurisdiction"). As explained by Federal Procedure: "A change in the judicial view of the law generally is not 'any other reason' justifying relief from a final judgment, order, or proceeding under Rule 60(b)(6)." 21A Fed. Proc., L. Ed. § 51:169; *see, e.g., Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) ("Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6) . . . ."); *McGuire v. Warden, Chillicothe Correctional Inst.*, 738 F.3d 741, 750 (6th Cir. 2013) (noting that "it is well established that a change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief"); *Blue Diamond Coal Co. v. Trustees of UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (same). Tennessee Courts have likewise held that a change in decisional law, without more, is insufficient to require relief pursuant to Rule 60.02. *See White v. Gault*, No. M2000-00534-COA-R3-CV, 2001 WL 950042, at *3 (Tenn. Ct. App. Aug. 21, 2001) (quoting *Bailey v. Ryan Stevedoring Co., Inc.*, 894 F.2d 157, 160 (5th Cir. 1990) ("A change in decisional law after entry of judgment does not constitute exceptional circumstances and is not alone grounds for relief from a final judgment.")).

Unlike in **Shelbyville**, however, the change in this case does not involve decisional law; rather, it involves the statutory framework that governs annexations in Tennessee. As explained by the Tennessee Supreme Court in *Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695 (Tenn. 2009):

> Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be intrusted to them . . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state . . . . The state, therefore, at its pleasure, may modify or withdraw all such powers, may take without compensation such property, hold it itself, or vest it in other agencies, expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation.

*Id.* at 702 (quoting *Hunter v. City of Pittsburgh*, 207 U.S. 161, 178–79, 28 S.Ct. 40, 52 L.Ed. 151 (1907)). Thus, "the power to alter the boundaries of a municipality has been viewed as a natural result of the legislature's broader power to establish and abolish municipal corporations." *Highwoods Properties*, 297 S.W.3d at 702.

In 1955, the Tennessee General Assembly, acting under the authority of article XI, section 9 of the Tennessee Constitution,[5] enacted a law governing the annexation of land to the borders of existing municipalities ("the 1955 Act"). *Id.* at 704. According to the Tennessee Supreme Court:

> The 1955 Act provided for three mechanisms of annexation: (1) a single referendum by the voters in the area to be annexed, Act of Mar. 1, 1955, § 3, 1955 Tenn. Pub. Acts 382, 384–85 (codified as amended at Tenn. Code Ann. §§ 6-51-104, -105 (2005)); (2) two concurrent referenda by, on the one hand, voters in the area to be annexed and, on the other, voters within the annexing municipality, both of which must be successful to establish annexation, id.; and (3) an ordinance of the annexing municipality, *id.* § 2 (codified as amended at Tenn. Code Ann. § 6-51-102 (Supp. 2008)).

*Highwoods Properties*, 297 S.W.3d at 704. The only mechanism at issue in this case involves an ordinance of the annexing municipality, which method has been described as a "radical" departure from the law prior to 1955. *Id.* (describing the annexation by ordinance provision as "[t]he most innovative aspect of the 1955 Act") (citing Frederic S. Le Clercq, *Tennessee Annexation Law: History, Analysis, and Proposed Amendments*, 55 Tenn.L.Rev. 577, 583 (1988)). Accordingly, the power of municipalities to annex areas by ordinance is granted by the Tennessee General Assembly and governed exclusively by statute.

Here, the City, pursuant to the power granted to it from the General Assembly, sought to annex the Southwind Annexation area pursuant to an ordinance. The City and the Appellees entered into a consent order allowing the annexation to proceed, predicated on the fact that the City had power to annex the area by ordinance pursuant to authority granted to the City by the General Assembly. In 2013, after the entry of the consent judgment allowing the annexation to proceed, but before the annexation was to take place, the General Assembly saw fit to limit the power of municipalities to annex adjoining property by ordinance. *See* 2013 Tenn. Pub. Laws Ch. 441 (S.B. 279). The Appellees argue that this change removed the City's authority to annex any property during the relevant time period. Although the City denies that Tennessee Code Annotated Section 6-51-122 should be interpreted to preclude the annexation at issue in this case, there can be no dispute that the enactment of Tennessee Code Annotated Section 6-51-122 constitutes a significant change in the law with regard to

---

[5] Article XI, section 9 of the Tennessee Constitution provides, in relevant part: " The General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered."

a municipality's power to annex property by ordinance. The change at issue in this case is not merely a change in how a statute is interpreted by the court, but presents a substantive and significant alteration in the annexation power of municipalities. Tennessee courts have held that the passage of subsequent legislation may, in some circumstances, be sufficient to justify setting aside a consent order. *See White v. Armstrong*, No. 01A01-9712-JV-00735, 1999 WL 33085, at *3 (Tenn. Ct. App. Jan. 27, 1999) (noting that a change in circumstances that might warrant modification of a judgment includes "passage of subsequent legislation") (citing *Protectoseal Co. v. Barancik*, 23 F.3d 1184, 1187 (7th Cir. 1994)); *Richards v. Read*, No. 01A01-9708-PB-00450, 1999 WL 820823, at *8 (Tenn. Ct. App. July 27, 1999) (same). Federal courts have also indicated that significant change in the substantive law upon which a judgment is predicated may be sufficient to justify relief from a judgment. *See Horne v. Flores*, 557 U.S. 433, 447, 129 S.Ct. 2579 (2009) (allowing a party to seek relief from a judgment or order if "'a significant change either in factual conditions or in law' renders continued enforcement 'detrimental to the public interest'") (quoting *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992)); *John B. v. Emkes*, 710 F.3d 394 (6th Cir. 2013) (noting that "a court may vacate a consent decree if, among other things, "a significant change . . . in law renders [its] continued enforcement detrimental") (quoting *Northridge Church v. Charter Twp. of Plymouth*, 647 F.3d 606, 613 (6th Cir. 2011)). Again, the United States Supreme Court has explained the rationale for this rule: "The court must be free to continue to further the objectives of that Act when its provisions are amended. The parties have no power to require of the court continuing enforcement of rights the statute no longer gives." *System Federation No. 91*, 364 U.S. at 651–52. Accordingly, we decline to adopt a rule wherein the court is deprived from considering a motion pursuant to Rule 60.02 when the basis for the motion is the subsequent passage of legislation which may significantly affect the parties' respective rights and prospective obligations pursuant to the final order of the court.

Our decision that the Appellees could petition the trial court for relief from the consent judgment based upon the intervening passage of legislation does not, *ipso facto*, lead to the conclusion that the trial court correctly exercised its discretion in enjoining the annexation based upon its interpretation of Tennessee Code Annotated Section 6-51-122. Accordingly, we turn to that question.

**Tennessee Code Annotated Section 6-51-122**

The City next argues that the trial court erred in setting aside the June 8, 2006 consent order based upon its interpretation of Tennessee Code Annotated Section 6-51-122. According to the City, the plain language of Tennessee Code Annotated Section 6-51-122 does not prevent the City from annexing areas B1 and B2 of the Southwind Annexation Area. Specifically, the City argues that its Ordinance became effective prior to the annexation

moratorium established in Tennessee Code Annotated Section 6-51-122, and, therefore, the annexation moratorium does not prevent the annexation at issue. In contrast, the Appellees argue that the trial court correctly concluded that Tennessee Code Annotated Section 6-51-122 prevents the annexation of areas B1 and B2 of the Southwind Annexation Area, which annexation was to become effective during the moratorium established by the statute.

This issue involves the interpretation of Tennessee Code Annotated Section 6-51-122. Although we review the trial court's overall decision to grant Rule 60.02 relief under the abuse of discretion standard, *see Beason v. Beason*, 120 S.W.3d 833 (Tenn. Ct. App. 2003), this specific issue involves the proper interpretation to be given to a statute. Consequently, we shall review the trial court's interpretation of Tennessee Code Annotated Section 6-51-122 *de novo*, with no presumption of correctness. *See Pickard v. Tennessee Water Quality Control Bd.*, 424 S.W.3d 511, 518 (Tenn. 2013) (citing *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012)). In determining the proper interpretation to be given to a statute, we must employ the rules of statutory construction. The Tennessee Supreme Court recently reiterated the "familiar rules," stating:

> Our role is to determine legislative intent and to effectuate legislative purpose. [*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)]; *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See Lee Med., Inc.*, 312 S.W.3d at 526; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See Lee Med., Inc.*, 312 S.W.3d at 527; *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012). Due to the relatively recent passage of Tennessee Code Annotated Section 6-51-122, no courts of this State have been called

upon to interpret its requirements.[6] As such, the applicability and interpretation of Tennessee Code Annotated Section 6-51-122 to the facts of this case are a question of first impression in this Court.

Thus, we begin our discussion with the language of Tennessee Code Annotated Section 6-51-122, as it existed in 2013, when this case was initiated,[7] which states, in relevant part:

> (a)(1)(A) Notwithstanding this part or any other law to the contrary, from April 15, 2013, through May 15, 2014, no municipality shall extend its corporate limits by means of

---

[6] Although no courts have yet considered Tennessee Code Annotated Section 6-51-122, the Tennessee Attorney General recently released an opinion regarding the applicability of the annexation moratorium in facts substantially similar to those presented in this case. *See* Tenn. Op. Atty. Gen. No. 13-71(2014). The Attorney General's Opinion is discussed in detail, *infra*.

[7] We note that Tennessee Code Annotated Section 6-51-122 was recently amended. *See* 2014 Tenn. Laws Pub. Ch. 707 (S.B. 2464), § 1 (eff. April 15, 2014). The new version of Tennessee Code Annotated Section 6-51-122 provides, in pertinent part:

> (a) Notwithstanding any provision of this part or any other law to the contrary:
>
> (1)(A) From April 15, 2013, through the effective date of Section 1 of this act [i.e., April 15, 2014], no municipality shall extend its corporate limits by means of annexation by ordinance upon the municipality's own initiative, pursuant to § 6-51-102, in order to annex territory being used primarily for residential or agricultural purposes; and no such ordinance to annex such territory shall become operative during such period, except as otherwise permitted pursuant to subdivision (a)(1)(B);
>> (B) If, prior to April 15, 2013, a municipality formally initiated an annexation ordinance restricted by subdivision (a)(1)(A); and if the municipality would suffer substantial and demonstrable financial injury if such ordinance does not become operative prior to the effective date of Section 1 of this act; then, upon petition by the municipality submitted prior to the effective date of Section 1 of this act, the county legislative body may, by a majority vote of its membership, waive the restrictions imposed on such ordinance by subdivision (a)(1)(A); . . . .

2014 Tenn. Laws Pub. Ch. 707 (S.B. 2464), § 1. The changes do not materially effect our discussion in this case, except as discussed in detail, *infra*. Thus, we refer to the 2013 version of Tennessee Code Annotated Section 6-51-122 throughout this Opinion.

-22-

annexation by ordinance upon the municipality's own initiative, pursuant to § 6-51-102, in order to annex territory being used primarily for residential or agricultural purposes; and, except as otherwise permitted pursuant to subdivision (a)(2), no such ordinance to annex such territory shall become operative during such period.

> (B) As used in this subsection (a), "municipality" does not include any county having a metropolitan form of government.

> (2) If, prior to April 15, 2013, a municipality formally initiated an annexation ordinance delayed by subdivision (a)(1)(A); and if the municipality would suffer substantial and demonstrable financial injury if such ordinance does not become operative prior to May 15, 2014; then, upon petition by the municipality, the county legislative body may, by a majority vote of its membership, waive the restrictions imposed on such ordinance by subdivision (a)(1)(A).

Tenn. Code Ann. § 6-51-122 (2013). The annexation at issue in this case was to take place on December 31, 2013. The Appellees argue that this fact places the annexation squarely within the annexation moratorium outlined above. In contrast, the City argues that the above statute does not place a moratorium on annexations that take place between April 15, 2013 through May 15, 2014, but only on annexation ordinances that become operative between those dates. The City argues that because the applicable Ordinance became operative on the date of the entry of the June 8, 2006 consent order, the annexation moratorium does not apply. Thus, the City argues that proper interpretation of the above statute rests on the distinction between the operative date of the annexation and the operative date of the annexation ordinance.

We agree. The Tennessee Supreme Court has previously held that there is a distinction between the operative date of an ordinance and the effective date of an annexation. *See Highwoods Properties, Inc. v. City of Memphis*, 297 S.W.3d 695, 711–12 (Tenn. 2009). In *Highwoods Properties*, the plaintiff landowners filed a declaratory judgment action to set aside a consent judgment entered in a *quo warranto* action to which the plaintiffs were not parties[8] on the basis that the consent judgment was an impermissible amendment of an

---

[8] Here, there is no dispute that the Appellees were plaintiffs in a timely-filed *quo warranto* action.

annexation ordinance. *Id.* at 697. The ordinance at issue specifically stated that the annexation would be divided into two stages, one taking place in 2006, and the remainder of the annexation taking place in 2013. The trial court dismissed the declaratory judgment action on the basis that the plaintiffs failed to bring their claim in a timely *quo warranto* action, which decision was affirmed by the Tennessee Supreme Court. Specifically, the Court held that a plaintiff challenging an annexation must bring a *quo warranto* action prior to the operative date of the ordinance, rather than the date the proposed annexation is to take place. *Id.* at 711–12.

In reaching its decision, our Supreme Court discussed the distinction between the operative date of an annexation ordinance and the effective date of the annexation. First, the Court looked to the relevant statutory language governing *quo warranto* actions, as adopted by the Tennessee General Assembly. Specifically, the Supreme Court considered the plain language of Tennessee Code Annotated Section 6-51-103(d)(1), the statute governing *quo warranto* actions, which provides, in pertinent part:

> In the absence of such finding [in a timely filed *quo warranto* action, that an annexation ordinance is unreasonable], an order shall be issued sustaining the validity of **such ordinance**, **which shall then become operative thirty-one (31) days after judgment** is entered unless an abrogating appeal has been taken from the judgment, or unless the presiding court grants the municipality's petition to defer the effective date pursuant to subdivision (d)(2).

Tenn. Code Ann. § 6-51-103(d)(1) (emphasis added). Our Supreme Court interpreted the above language as indicating that regardless of the effective date of the actual annexation, an annexation ordinance becomes operative thirty-one days after an order is entered sustaining the ordinance in a *quo warranto* action, where a timely *quo warranto* action has been filed. As explained by the Tennessee Supreme Court:

> Th[e plaintiffs'] argument [that their lawsuit was timely filed] rests on a faulty assumption that there is no difference between the effective date of the ordinance and the effective date of the annexation. In our view, although the entire ordinance became operative thirty-one days after the entry of the consent judgment, the very terms of that judgment also properly delay the annexation of Area B until a later date. *See* [*State ex rel.*] *Bastnagel* [*v. City of Memphis*], 457 S.W.2d 532,] 534–35 [(Tenn. 1970)] (holding that the date on which an annexation

-24-

ordinance becomes operative is not necessarily "the actual date of annexation"). The actual date of annexation for Area B has been merely postponed by a term contained within the judgment approved by the trial court as reasonable under the circumstances.

*Highwoods Properties*, 297 S.W.3d 695, 711–12. Thus, the operative date of an ordinance, which has been subject to a *quo warranto* action, is thirty-one days from the entry of an order sustaining the ordinance. *Id.*

To support its interpretation of Tennessee Code Annotated Section 6-51-103(d)(1), the *Highwoods Properties* Court cites an earlier Tennessee Supreme Court case concerning annexation by ordinance, *State ex rel. Bastnagel v. City of Memphis*, 457 S.W.2d 532 (Tenn. 1970). In *Bastnagel*, the plaintiffs appealed the trial court's dismissal of their *quo warranto* action on the ground that the action was not timely filed based upon a statute that indicated that an annexation ordinance would become operative thirty days after final passage. *Id.* at 533 (citing Tenn. Code Ann. § 6-309 (1968)).[9] The plaintiffs had filed their action prior to the actual date of the annexation pursuant to the ordinance, but more than thirty days after the final passage of the ordinance. The *Bastnagel* Court considered a substantially similar *quo warranto* statute which provided that an annexation ordinance becomes "operative" thirty days after the passage of the ordinance. *Id.* at 534. The plaintiffs argued, however, that the statute does not operate as a bar on a *quo warranto* action filed more than thirty days from the passage of the ordinance, when the action is filed prior to the actual date of the annexation. The Tennessee Supreme Court held that the "operative" language in the *quo warranto* statute placed a time limit on the availability of *quo warranto* actions by aggrieved land owners based upon the final passage of the ordinance, rather than the actual date of the annexation:

> [W]e think the language of [the *quo warranto* statute] "provided said ordinance shall not become operative until thirty days after final passage" was written into this statute for the sole purpose of giving aggrieved landowners a reasonable time to further

---

[9] Tennessee Code Annotated Section 6–309 (1968) provided that an annexation "ordinance shall not become operative until thirty (30) days after final passage thereof." Although the law has been recodified at Tennessee Code Annotated Section 6-51-102, the time period for when an ordinance becomes operative when no *quo warranto* action has been filed remains the same in this case. *See* Tenn. Code Ann. § 6-51-102(a)(1) ("[T]he ordinance shall not become operative until thirty (30) days after final passage thereof."); *see also Cochran v. City of Memphis*, No. W2012-01346-COA-R3-CV, 2013 WL 1122803, at *3 (Tenn. Ct. App. March 19, 2013) (no perm. app. filed) ("The ordinance becomes operative thirty days after final passage, as aggrieved property owners may contest annexation during this thirty-day period.")).

pursue their objections in the courts and by this language the Legislature intended the aggrieved landowners to have this thirty days and to limit their time to this thirty days.

*Id.* at 535. Thus, the Tennessee Supreme Court held that the operative date of an annexation ordinance is separate and distinct from the effective date of the annexation, and that the operative date of the ordinance is the crucial date for purposes of the timeliness of a *quo warranto* action. *See also* ***Cochran v. City of Memphis***, No. W2012-01346-COA-R3-CV, 2013 WL 1122803, at *3 (Tenn. Ct. App. March 19, 2013) (no perm. app. filed) ("The [annexation] ordinance becomes operative thirty days after final passage, as aggrieved property owners may contest annexation during this thirty-day period."); ***Town of Huntsville v. Scott County***, 269 S.W.3d 57, 61 & n.5 (Tenn. Ct. App. 2008) (noting that where a timely *quo warranto* action is filed, the annexation ordinance becomes "operative" thirty-one days from when "the ordinance is upheld as valid by the presiding court"); ***City of Knoxville v. Knox County***, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at *3 (Tenn. Ct. App. Feb. 20, 2008) *perm. app. denied* (Tenn. Aug. 25, 2008) (holding that the ordinance became operative thirty days after the *quo warranto* action was dismissed based upon settlement of the parties, relying on a previous version of the *quo warranto* statute).

From our review of Tennessee Code Annotated Section 6-51-122, we are also of the opinion that the operative date of the annexation ordinance, rather than the effective date of the annexation, is the crucial inquiry for purposes of whether the annexation moratorium applies to bar the annexation in this case. First, the language of the statute concerns the operative date of the annexation ordinance, rather than the operative date of the annexation. Specifically, the statute provides that "no such ordinance to annex such territory shall become operative during such period." Tenn. Code Ann.§ 6-51-122(a)(1)(A). This limitation clearly applies to ordinances that become operative during the moratorium, rather than annexations that become effective during that time.

Further, the language of Tennessee Code Annotated Section 6-51-122(a)(1)(B), stating that the prohibition in subdivision (a)(1)(A) will not apply in certain circumstances is instructive as to the General Assembly's intent in this case. Tennessee Code Annotated Section 6-51-122(a)(1)(B) provides when the "municipality [has] formally initiated an annexation ordinance" prior to May 15, 2014, the municipality may take steps to waive the restrictions of (a)(1)(A), if the municipality would suffer "demonstrable financial injury **if such ordinance does not become operative** prior to May 15, 2014." (Emphasis added). This language again emphasizes that the critical date is when the ordinance becomes operative, rather than when the annexation takes place. Although this case does not concern the exception outlined in subsection (a)(1)(B), this Court is not permitted to construe the words in a statute in a vacuum, but must construe the language of a statute "if practicable, so that

its component parts are consistent and reasonable." *In re Estate of Tanner,* 295 S.W.3d 610, 614 (Tenn. 2009) (quoting *Marsh v. Henderson*, 424 S.W .2d 193, 196 (Tenn. 1968)). Thus, the statute's plain language demonstrates that the General Assembly was seeking to prevent municipalities from acting to initiate and finalize annexation ordinances during the moratorium.

Further, as previously discussed, Tennessee courts have consistently construed the term "operative," when modifying the term "ordinance," in the annexation statutory scheme, as referring to either thirty days from the final passage of the ordinance, when no *quo warranto* action is filed, or thirty-one days from the date upon which an order upholding the validity of the ordinance is entered, when a timely *quo warranto* action has been filed. *See Highwoods Properties*, 297 S.W.3d 695, 711–12; *Bastnagel*, 457 S.W.2d at 535; *Cochran* 2013 WL 1122803, at *3; *Town of Huntsville*, 269 S.W.3d at 61 & n.5; *City of Knoxville*, 2008 WL 465265, at *3. Statutes "must be read in relationship to one another to effectuate the intent of the statutory scheme as a whole." 82 C.J.S. Statutes § 474. Statutes which are to be construed in *pari materia* "are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Berry's Chapel Util., Inc. v. Tenn. Regulatory Auth.*, No. M2011-02116-COA-R12-CV, 2012 WL 6697288, at *3 (Tenn. Ct. App. Dec.21, 2012) (quoting *Wilson v. Johnson Cnty.*, 879 S.W.2d 807, 809–10 (Tenn. 1994)). In addition, the legislature is presumed to know both its prior enactments and the state of the law when passing new legislation. *Dixon v. Holland*, 70 S.W.3d 33, 37 (Tenn. 2002) (citing *State v. Levandowski*, 955 S.W.2d 603, 604 (Tenn. 1997)). Because other sections of the annexation statute have been construed to mean that the term operative refers to the date the ordinance becomes operative, rather than the date that the annexation goes into effect, our interpretation of Tennessee Code Annotated Section 6-51-122 is consistent with prior judicial interpretations of the statutory scheme.

Based on the foregoing, we hold that Tennessee Code Annotated Section 6-51-122(a)(1)(A) establishes an annexation moratorium prohibiting annexations by ordinance wherein the municipality's annexation ordinance becomes operative from April 15, 2013through May 15, 2014. In this case, the City's annexation Ordinance became operative thirty-one days after the order was entered sustaining the validity of the Ordinance in the Appellee's timely filed *quo warranto* action, i.e., July 9, 2008. Because the City's Ordinance became operative prior to the moratorium established by the Tennessee General Assembly, the trial court erred in setting aside the consent order on the basis of Rule 60.02(5).

While not binding on this Court, we note that our decision is consistent with a recent Tennessee Attorney General's Opinion on this issue. *See* Tenn. Op. Atty. Gen. No. 13-71 (Sept. 4, 2013). Opinions of the Tennessee Attorney General are "persuasive," *Whaley v.*

*Holly Hills Mem. Park, Inc.*, 490 S.W.2d 532, 533 (Tenn. Ct. App. 1972), and "entitled to considerable deference." *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995). In the Opinion, the Attorney General was asked to opine as to whether the annexation moratorium contained in Tennessee Code Annotated Section 6-51-122 applied to prevent an annexation where: (1) the annexation ordinance was read for final passage in 2009; (2) the ordinance was the subject of a timely *quo warranto* action, wherein an order upholding the validity of the ordinance was entered prior to the effective date of Tennessee Code Annotated Section 6-51-122; and (3) the effective date of the annexation was delayed by the above order until December 31, 2013. Tenn. Op. Atty. Gen. No. 13-71, at *2–3. According to the Attorney General, the date that the ordinance becomes operative is the critical date for determining whether the moratorium applies:

> The municipality initiated and passed the Annexation Ordinances in question in 2009, well before the time frame staying a municipality from initiating an annexation ordinance set by [Tennessee Code Annotated Section 6-51-122]. Thus, the "initiation" of these ordinances was not stayed by [Tennessee Code Annotated Section 6-51-122]. *See Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 308 (Tenn. 2012) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)) (stating rule of statutory construction that courts will discern legislative intent "from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend . . . the statute's meaning). The filing of the *quo warranto* action questioning the legality of the annexation ordinance at issue did not alter the fact that the municipality had initiated and taken all action required to pass the ordinances in 2009; the *quo warranto* action merely held the effective date of annexation in abeyance until the filed action was resolved. *See Town of Huntsville v. Scott County*, 269 S.W.3d 57, 61–62 (Tenn. Ct. App. 2008); *City of Knoxville v. Knox County*, No. M2006-00916-COA-R3-CV, 2008 WL 465265, at * 3-4 (Tenn. Ct. App. Feb. 20, 2008); *Jefferson County v. City of Morristown*, No. 03A01-9810-CH-00331, 1999 WL 817519, at * 7–9 (Tenn. Ct. App. Oct. 13, 1999).
>
> The more difficult question is whether the language in [Tennessee Code Annotated Section 6-51-122] prohibiting certain annexation ordinances from becoming "operative" between April 13, 2013 and May 15, 2014, applies to the ordinances at issue. . . .

The threshold issue for this inquiry is when did the Annexation Ordinances become effective and operative—the date they were enacted in 2009, the date the Agreed Order became effective under Tennessee Rule of Civil Procedure 58[10] . . . , or the "effective date" of December 31, 2013 referenced in the Agreed Order. The law of Tennessee establishes the "effective or operative" date of an annexation ordinance is held "in abeyance" by the filing of a proper *quo warranto* action and that the challenged annexation ordinance does not "become effective or operative" until the date the *quo warranto* action is resolved. *Town of Huntsville*, 269 S.W.3d at 61-62. Here the *quo warranto* action was resolved by the Agreed Order entered with the Circuit Court Clerk . . . . *See* Tenn. R. Civ. P. 58. Under Tennessee law on that date the Annexation Ordinances became "effective or operative."[11] *See Town of Huntsville*, 269 S.W.3d at 61–62. The entry of the Agreed Order resolved the *quo warranto* action between the parties and caused the Annexation Ordinances to become effective and operative under Tennessee law, thereby vesting the parties to that action with a binding resolution of all contested issues.

---

[10] Rule 58 of the Tennessee Rules of Civil Procedure, states:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
>
> (1) the signatures of the judge and all parties or counsel, or
> (2) the signatures of the judge and one party or counsel with a certificate of counsel that a copy of the proposed order has been served on all other parties or counsel, or
> (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

[11] We note that the Tennessee Attorney General's Opinion fails to consider Tennessee Code Annotated Section 6-51-103(d), which provides that when a timely *quo warranto* action is filed, the operative date of the ordinance is not the date an order is entered sustaining the validity of the ordinance, but thirty-one days after the sustaining order is entered. *See* Tenn. Code Ann. § 6-51-103(d) ("[A]n order shall be issued sustaining the validity of such ordinance, which shall then become operative thirty-one (31) days after judgment is entered unless an abrogating appeal has been taken therefrom."). This discrepancy has no effect on the present controversy.

Tenn. Op. Atty. Gen. No. 13-71, at *2–3 (footnotes omitted).[12] Thus, the Tennessee Attorney General likewise concluded that the crucial date for purposes of determining whether an annexation is prohibited by Tennessee Code Annotated Section 6-51-122 is the date upon which the annexation ordinance became operative, rather than the date of the actual annexation.

The Appellees argue, however, that the Tennessee Attorney General's Opinion should not be entitled to persuasive weight because of a recent enactment of the Tennessee General Assembly that changed the statutory landscape upon which this case must be decided. On April 15, 2014, while this case was pending appeal, the Tennessee General Assembly passed legislation amending Tennessee Code Annotated Section 6-51-102 to provide that "Subsection (a) of this section prohibits any annexation by ordinance that is not both operative and effective prior to May 16, 2015." 2014 Tennessee Laws Pub. Ch. 707 (S.B. 2464), § 2. Thus, the Appellees argue that this recent enactment is evidence of the General Assembly's intent to forbid annexations by ordinance whether the ordinances become operative during the moratorium, or whether the annexation becomes effective during the moratorium. Under this interpretation of Tennessee Code Annotated Section 6-51-122, the Appellees argue that the annexation of areas B1 and B2 of the Southwind Annexation Area would be prohibited by the moratorium. This argument, however, is in error for several reasons. First, the General Assembly specifically chose to delay the effective date of this amendment to May 16, 2015. *See* 2014 Tennessee Laws Pub. Ch. 707, § 8 ("Sections 2, 3 and 4 of this act shall take effect on May 16, 2015."). We "presume that the legislature says in a statute what it means and means in a statute what it says there." ***Rogers v. Louisville Land Co.***, 367 S.W.3d 196, 214 (Tenn. 2012) ((quoting ***Gleaves v. Checker Cab Transit Corp.***, 15 S.W.3d 799, 803 (Tenn. 2000)). Accordingly, by choosing to delay the effective date of this amendment, the General Assembly expressed clear intent that this amendment should not apply to the current litigation. *See **State v. Smith***, --- S.W.3d ----, 2014 WL

---

[12] From our review of the Attorney General's Opinion, there appears to be some confusion as to the date the agreed order resolving the *quo warranto* action was filed. In five places, the Opinion recites that the agreed order was entered on April 30, 2012. *See* Tenn. Op. Atty. Gen. No. 13-71, at *1–3. In one place, however, the Opinion recites that the agreed order was entered on April 20, 2013. Further, the Opinion states that: "The *quo warranto* action was resolved by an Agreed Order that became effective on April 30, 2012, before the effective date of [Tennessee Code Annotated Section 6-51-122] [i.e, May 16, 2013] but during the time frame established by [Tennessee Code Annotated Section 6-51-122] precluding annexation ordinances from becoming operative." Tenn. Op. Atty. Gen. No. 13-71, at *2. However, the time frame for the annexation moratorium is from April 13, 2013 through May 15, 2014. Tenn. Code Ann. §6-51-122(a)(1)(A). If the agreed order was, in fact, entered on April 30, 2012, it would have been entered well before the "time frame established by [Tennessee Code Annotated Section 6-51-122] precluding annexation ordinances from becoming operative." Tenn. Op. Atty. Gen. No. 13-71, at *2. Again, this discrepancy does not alter our view that the Tennessee Attorney General correctly determined the crucial date for ascertaining whether the annexation moratorium applies to a particular ordinance.

2766674 (Tenn. 2014) ("Our primary concern is to carry out this intent without unduly expanding or restricting the language of the statute beyond the legislature's intended scope.") (citing ***Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc.***, 978 S.W.2d 91, 93 (Tenn.1998)). In addition, by its very terms, the above amendment applies to Tennessee Code Annotated Section 6-51-102, the general annexation ordinance statute, rather than the annexation moratorium statute. Further, it is unclear as to what subsection of Tennessee Code Annotated Section 6-51-102 this provision applies, as the General Assembly deleted subsection (a) of Tennessee Code Annotated Section 6-51-102 immediately prior to this provision. *See* 2014 Tennessee Laws Pub. Ch. 707, § 2 ("Tennessee Code Annotated, Section 6-1-102, is amended by deleting subsections (a), (c), and (d)."). Accordingly, we decline the Appellees invitation to apply this recent enactment to the analysis in this case.

Based upon the foregoing analysis, we reverse the Shelby County Chancery Court's decision to set aside the June 8, 2006 consent judgment. The June 8, 2006 consent judgment is, therefore, reinstated. All other issues are hereby pretermitted. This cause is remanded to the trial court for all further proceedings as may be necessary and are consistent with this Opinion. Costs are assessed to Appellees Doyle S. Silliman, Marilyn Williams, Harry E. Smith, III, Kathleen J. Smith, Larry Sawyer, Wanda Sawyer, Robert E. Teutsch, Roslyn M. Teutsch, Frank G. Witherspoon, and Martha C. Witherspoon, for all of which execution may issue, if necessary.

_____
J. STEVEN STAFFORD/JUDGE